E. A. PEARSON, ADM'R, v. GILES H. BURDITT.

In an action by an administrator *de bonis non* to recover land sold by a preceding administrator under an order of the Probate Court, the plaintiff charged fraudulent collusion in the sale between the former administrator and the defendant, who was the purchaser at the sale; the defendant pleaded the statute of limitations of three years, and set up his deed from the former administrator as one of the links in the title adduced by him in support of his plea: *Held*, that such deed was sufficient to support the plea, notwithstanding the fraud in the sale may have been proved to the satisfaction of the jury.

See the pleadings in this case for admissions made by the defendant, and held by the court not to constitute fraud in his purchase of land at an administrator's sale.

The case of Burditt v. Silsbee's Adm'r, (15 Texas Rep., 604,) referred to and explained.

An administrator's deed for land sold under order of the Probate Court, voidable for fraudulent collusion between the administrator and the purchaser, is impeachable only by a legal representative of the estate, or by the heirs or devisees;—as to all other persons, it is valid to all intents.

A deed from an administrator for land sold at his administration sale, under order of the Probate Court, and duly confirmed by that court, passes the legal title of the land to the purchaser, notwithstanding such deed may be voidable at the suit of a subsequent administrator, or of the heirs or devisees of the estate, on account of fraudulent collusion in the sale between the purchaser and the former administrator. Consequently, in a suit for the recovery of the land by the subsequent administrator or by the heirs or devisees, such a deed, being voidable only and not void, is sufficient as a link in the title adduced to support the plea of the statute of limitations of three years.

Where it appears from the whole of the record that the appellee was entitled to the verdict he obtained in the court below, the judgment thereon in his favor will not be reversed in this court, for the reason that the verdict was contrary to the charge of the court below.

The leading object and effect of the statute of limitations are to make the period of prescription mature the inferior title in the hands of the possessor into the superior title.

The terms "intrinsic fairness and honesty," embraced in the definition of color of title in our statute, relate to the means of proving the right of property in the land, so as to make the title equitably equal to a regular chain.

APPEAL from Williamson. Tried below before the Hon. E. H. Vontress.

This case was formerly before this court under the style of Burditt v. Silsbee, and is reported in the 15th volume of Texas Reports, to which reference is made for a statement of the facts had on the first trial in the court below.

The case having been reversed and remanded on the 16th day of March, 1858, the plaintiff filed an amended petition as follows, to wit:

"And now comes the said plaintiff by his attorney, and by leave of the court first had and obtained, amends his original petition filed in this cause, and says, that the said title set up and pleaded by said defendant, executed by Charles K. Reese, as the administrator of the estate of the said Albert Silsbee, deceased, was and is fraudulent and void, and the plaintiff especially charges, that several months prior to the date of said pretended administrator's deed, the said petition for the sale, and the order of the Probate Court of Bastrop county thereon, directing said land to be sold, the said defendant and the said Charles K. Reese entered into a private contract for the sale and purchase of said land, whereby the said defendant agreed to pay, and the said Charles K. Reese agreed to receive the price of fifty cents per acre for the same; and that under and by virtue of said private contract, and not under the said sale by said Reese as administrator, but before the same was made, said defendant entered upon and took possession of said land, and has from thenceforth continued to hold and occupy the same, to wit, from the 10th day of June, A. D. 1848; and this plaintiff further charges, that said Reese and said defendant Burditt, in their said private contract, further fraudulently contracted and agreed that said defendant should have said land at the fixed and certain price of fifty cents per acre, and that to consummate said private contract, said Reese should procure an order of sale from the Probate Court of Bastrop county, directing and authorizing him as administrator to sell said land, and that said Burditt should bid off the same, but that if it should be knocked off to him at a price less than fifty cents per acre, the said defendant Burditt should still pay to him fifty cents per acre, but said Reese should account in his return of said sale for only the sum at which said land should be bid off, and that he should appro

priate to his private use the difference at which said land should be bid off by said Burditt, and the fifty cents per acre agreed to be paid as aforesaid; that it was further agreed that if said Burditt should bid off said land at said sale at a greater price than fifty cents per acre, he should only pay fifty cents per acre therefor, and the said Reese should make up the difference. And this plaintiff says, that the reasons given in the petition of said Reese as administrator aforesaid, for the sale of said land, were fictitious and false; that, as appears by the transcript of his said administration from Bastrop county, there were no debts due and owing from said estate whereby it had become necessary to sell said land; that all debts had long previously been paid, if any existed, or were barred by the statute of limitation; and that said Reese had not accounted for the assets in his hands belonging to said estate, as shown in the inventory filed by him as such administrator, and that there were no claims, debts or demands, legally presented and filed against said estate. And this plaintiff charges, that said petition, order of sale, confirmation by the court thereof, and the execution of the deed by said Reese as administrator as aforesaid, were fraudulent contrivances, wherein the said Reese and the said Burditt were to carry into effect their aforesaid private contract; and this plaintiff further charges, that the said private contract was the real contract under which said Burditt purchased said land, and that his purchase at said administrator's sale was only a pretence and colorable; that he paid Reese fifty cents an acre therefor under said private contract, and did not claim the same at twenty cents per acre under said administrator's sale; that said Reese did appropriate to his private use the said thirty cents per acre over and above the twenty cents per acre at which said land was bid off, and that he never did account and pay over the twenty cents per acre for which the same was sold as aforesaid. The plaintiff further charges, that said land was well worth fifty cents per acre and more, and he submits to the court if said Burditt is not estopped from denying that it was worth that sum; and this plaintiff says, that said pretended sale at twenty cents per acre was at a grossly inadequate price, procured by the fraudulent contract and contrivances of said Reese and said defendant Burditt;

and further, that said Reese fraudulently appropriated to his private use thirty cents per acre, or $442 80 of the price for which said land was actually sold, and that said Burditt was a party to, and contracted with said Reese for such fraudulent appropriation thereof. Wherefore this plaintiff says, that all said contracts, sales and deeds, made and procured by and between said Reese and said Burditt, were and are fraudulent and void. And this plaintiff further charges, that said Burditt has been in the possession of said land for the period of nine years from the time of his taking possession thereof under said private contract to the filing of this amendment, using and enjoying the same in person and by tenants under him, and receiving the rents, issues and profits of said land; that there are good dwelling-houses and out-houses thereon, and three hundred and twenty-five acres of land in cultivation, and that the same is worth the reasonable annual rent of two thousand dollars per annum. Plaintiff therefore prays as heretofore for a judgment for the possession of said land and for his damages, and also judgment for the rents and profits thereof at the rate of two thousand dollars as aforesaid, and for such general relief as the facts of his case will authorize and equity sanction, &c."

At the same time the intervenors filed a petition setting forth substantially the same facts as are contained in the foregoing amended petition of plaintiff.

The defendant pleaded the statute of limitations for three years, and filed an amended answer as follows, to wit:

" And now on this day comes the defendant, Giles H. Burditt, by his attorneys, leave of the court being had, and for answer to amended petition of the plaintiff, Pearson, administrator, &c., filed on the 16th March, 1858, and by way of amendment to his, the said defendant's former pleas and defences herein filed, and says:

" I. That it is not true, as stated in the aforesaid amended petitions of said plaintiff and intervenors, that the administrator's deed or title for the land in controversy heretofore set up by this defendant, executed by Charles K. Reese as the administrator of Albert Silsbee, deceased, was and is fraudulent and void. But, on the contrary, this defendant avers that said title so pleaded as

aforesaid is and was a good and valid legal title, fairly acquired for a valuable consideration.

"II. And defendant further answering said amended petition, says, that it is true, as stated in said amendments, that some time prior to the said administrator's sale, he had an understanding with Charles K. Reese, then administrator of said Silsbee, which understanding was had under the circumstances and in the manner substantially as follows:   This defendant being desirous of purchasing a home, was advised to purchase the tract of land in controversy, and was informed that the said C. K. Reese controlled or owned it.   This information was given to him by the mutual acquaintance of defendant and said Reese, Reuben Hornsby, Sr., upon whose homestead defendant was then living; and upon the request of defendant, the said Hornsby agreed to travel to Brazoria county, where the said Reese then lived, with a view to effect a purchase of the said land from him—supposing, as he did, that the said Reese owned it in his own right, or otherwise had the right to sell the same—being ignorant of its true condition. When Mr. Hornsby returned, he informed defendant of the condition of the land, and handed him a letter from Mr. Reese, stating in substance that the land would have to be sold at administrator's sale, but that he, Reese, would agree to secure it to defendant at fifty cents per acre, if defendant would obligate himself to pay that price for it without reference to what it might be bid off at— that is to say, if it was bid off for less than fifty cents per acre, this defendant was still to pay as much as fifty cents; and if it went for more than fifty cents, Reese was to pay the excess.   And the said Reese further proposed in his said letter, that if defendant was willing to accede to his proposition, that he, defendant, might go upon the land and commence to improve the same.   Upon consultation with said Hornsby and others, defendant accepted the proposition, and went upon the land prior to the said administrator's sale.   And defendant further says, that when said sale occurred, he attended the same at the town of Bastrop in the county of Bastrop, and bid for said land; and being the highest bidder, at 20 cents per acre, the same was knocked off to him.   That he, defendant, had no agency or participation in procuring said order

of sale. That he supposed at the time of said sale, as also at the time of his said agreement with said Reese, that said sale was necessary to the administration of said estate: He also supposed said sale was legal and proper, having ascertained that an order therefor had been issued by the Probate Court of said county of Bastrop, and he is advised and believes and therefore charges that the same was a legal and valid sale; and defendant further says, that he did no act, and entered into no agreement or con-spiracy to prevent a fair sale of said land at said sale, from the time of his said agreement with said Reese up to the time of said sale. That he claimed at said sale no benefit or consideration on account of his said agreement, and did not even mention the ex-istence of said contract to the agent and attorney of said Reese, James A. Poage, (Reese not being present,) until after the sale was over. Wherefore defendant denies all and every charge of collusion and fraud with the said Reese to swindle, cheat or defraud the said estate of the said Silsbee or the heirs thereof; but on the contrary, avers that his purchase was fair and made in good faith, and, as he then believed and now avers, for a fair and adequate consideration. He further states, that he paid to the said Reese the full amount of the fifty cents per acre agreed upon by them; but that the deed executed by the said Reese was executed by him sometime after the said sale, and left for him, defendant, with the attorney of said Reese, and expresses only as the consideration the amount bid off at said sale. But this defendant avers that he had no agency in making the said deed, and no agreement with the said Reese in reference thereto, and accepted the same as the only title which was left for him. He further says, that the true amount which he paid was no secret, and so far as he was con-cerned was not intended to be so kept, and was in fact known to many persons, and that if wrong has been done to the estate or heirs of said Silsbee by withholding any portion of the purchase money, the same is justly chargeable to the said administrator in not accounting therefor; and he expressly denies any understand-ing with said Reese to the effect that said Reese was not to account, in his return of sales, for the whole of the purchase money, and that he, the said Reese, should appropriate a portion of it to his

own use; on the contrary, if the land had sold for more than fifty cents per acre, under the agreement, the said Reese would have been compelled to account for more than the amount paid by defendant.

"III. And further answering the aforesaid amended petitions, this defendant says in reply to the statements, charges and allegations touching the reasons given in the petition of the said C. K. Reese to the Probate Court of Bastrop county for an order to sell said land, the same being charged to be fictitious and false, that there were no debts existing against said estate making the said sale necessary; that said Reese had not accounted for the assets which had come to his hands belonging to said estate, and that said petition, order of sale, confirmation of the same by the court, and the execution of the deed by Reese to this defendant, were fraudulent contrivances between said Reese and this defendant to carry into effect their previous private contract and agreement, are each and every one of them, so far as this defendant is concerned, or charged to be privy to, or connected therewith, utterly and entirely false; and so far as said charges and allegations are made as disconnected with the acts or aid of this defendant, (if in this sense they are intended to be made,) defendant says that they are not sufficient in law to compel him to make answer thereto, and he prays judgment of the court upon this, his exception thereto. Defendant further answering said amended petitions says that it is not true, as stated, that said probate sale was only a pretext to carry into effect the aforesaid private agreement; this defendant only agreed as to what he would do touching the sale which he supposed would take place without any agreement. Whether the said Reese ever accounted for the whole of the money paid him by this defendant, or used it for his private purposes, this defendant does not know. This defendant admits that he was willing to pay fifty cents an acre for said land, and such was his estimate of its value to him for settlement. But he submits to the court whether he is bound by any estimate over and above the amount for which the land actually sold, if the sale was legal and fair. And this defendant denies that said twenty cents per acre, for which the land was bid off, was grossly inadequate, or that it was procured

by the contrivance, collusion or fraud of this defendant, in whole or in part, or that this defendant contracted with the said Reese for a fraudulent appropriation of any portion of the purchase money to his, the said Reese's, own use. Defendant denies that the annual rents and profits of said land, since he has been in the possession thereof, has been worth the sum of two thousand dollars. But defendant says he is entitled in any event to the value of his improvements on said land, as heretofore pleaded by him, both under the statute of the State and also in equity, which he avers, as heretofore, are worth the sum of .... dollars.

"And said defendant, by way of amendment to his former pleas and defences herein filed, says that he had been in the actual peaceable possession of the tract of land in controversy under title for more than three years next preceding the filing of the original petition in this suit, which said title consists of a regular chain of transfer from the sovereignty of the soil down to himself, which chain of title consists of a patent from the government of the Republic of Texas, dated the 5th day of February, 1841, granted to Albert Silsbee, assignee of H. T. Davis, and a deed from C. K. Reese, as administrator of said Silsbee, to this defendant, dated the first day of May, 1849, the said Reese being regularly and legally authorized, as administrator as aforesaid, to make such sale, and having an order of the Probate Court of Bastrop county, where said administration was pending, to make the same, a certified copy of which said patent from the General Land Office, and the said administrator's deed, were recorded respectively in the County Clerk's office of Travis county on the 25th and 26th May, 1849 ; that said possession has been continuous and uninterrupted until the bringing of this suit. Wherefore petitioner says that if the said original plaintiff, or either of said intervenors, ever had right of action against said defendant for the recovery of said land, the same is and was at the period of the commencement of this suit barred by limitation. Wherefore he prays judgment.

"And the said defendant further amending his former pleading herein, says that the said Edward A. Pearson, as administrator, ought not to have and maintain his aforesaid action, because he says that the Probate Court of Matagorda county had no juris-

diction of the estate and succession of the said Albert Silsbee, because he says that before any administration was granted in said county of Matagorda, administration had been opened on said estate in the county of Bastrop. That the jurisdiction of the Probate Court of said last mentioned county had attached to the said succession and excluded the concurrent jurisdiction of the said Probate Court of Matagorda county, so long as the said action of the Probate Court of Bastrop remained unrevoked, or otherwise undisposed of. And the said defendant further says, that under the aforesaid administration granted as aforesaid in Bastrop county, the said estate of the said Silsbee was fully and fairly administered, and all the debts which were presented and accepted were paid off and discharged, and all debts and demands against said estate not presented under said administration within the time prescribed by the then existing law, were forever barred and precluded. And this defendant further says, that the administration commenced upon said estate in the said county of Matagorda, if the same had been legal in its inception, (which is not admitted but denied,) was finally determined long before the grant of letters to the administrator who commenced this suit, because he says that one Wm. Baxter, who was the first administrator who qualified under the grant of letters from the said Probate Court of Matagorda county, executed his bond as administrator on the 27th day of April, 1840, and proceeded in his pretended administration until the 30th day of June, 1845, at which time, as appears by an order of the court, a final settlement was had with said administrator upon said estate, and he and his securities finally discharged, he having previously rendered his final account praying that the same might be received, and also praying that the creditors of said estate might be notified to attend and have the assets of said estate distributed amongst them. And defendant says that there appears in said final settlement no debts left unprovided for, and that the period had then long since elapsed under the then existing law for the presentation and allowance of claims against said estate; that upon the discharge of said Baxter, the said estate, if any remained, passed to and vested in the heirs of said estate, and that the subsequent grant of letters to one Elliott was without either

reason or authority of law, and void; and that the grant to the present plaintiff is in like manner unnecessary, expensive and prejudicial to the said estate, contrary to the reason and policy of the law, and therefore void. Wherefore defendant says that said plaintiff, Pearson, ought not to have or maintain his aforesaid action against this defendant. Wherefore he prays judgment, &c."

On the second trial of this cause in the court below, all the evidence introduced on the first trial, as reported in case of Burditt v. Silsbee, was offered, with the following additional facts as regards the fraud alleged:

In May or June, 1848, Reuben Hornsby, Sr., as agent for Giles H. and Newell Burditt, visited C. K. Reese in Brazoria county for the purpose of purchasing at private sale the land in controversy. Reese informed Hornsby that the land did not belong to him individually, and that he would have to proceed to sell the same by order of the Probate Court; that Burditt could take possession of the land until the sale took place; that if the land on the day of sale brought more than fifty cents per acre, he (Reese) would lose the difference, and only require the Burditts to pay fifty cents per acre; but should said land bring less than fifty cents per acre, he was to have the benefit of said sale. The deposition of Reese read in evidence says that he felt authorized to make said arrangement, because he had been put to considerable expense and trouble, for which the court allowed no compensation.

A letter from Burditt to Reese was read, acceding to the above proposition, stating that he had gone upon the land, built houses, and was living in them, expressing the opinion that there was no danger of any body running the land on him, (Reese,) and advising him that he had better see the writer or Hornsby before doing any thing about the sale of the land.

That Burditt had told Poage (Reese's agent,) on the day of the administrator's sale of the land, that he had purchased from, or contracted for said land, with Reese.

By Reuben Hornsby, Sen., (Burditt's agent,) that Reese said the land must be sold at administrator's sale, and that he, (H.,) understood at the time, that an administrator could not make title before a public administration sale.

Two witnesses stated that they declined to bid for the land on account of Burditt's living on it, and his previous contract.

Three witnesses stated that the land was worth more than it was bid off for, or than the sum agreed in the private contract to be paid for it; while two others stated that fifty cents per acre was the average price of such land in its neighborhood, at the time of the sale.

Verdict and judgment for the defendant.

Appeal by plaintiff and intervenors. The following errors were assigned, to wit:

1st. The said court refused to give the first charge asked by the said plaintiff.

2d. It appearing both from the answers of the defendants and the evidence in the case, the sale and purchase of the land in controversy by Burditt from Reese as administrator, was clearly and conclusively fraudulent, without any contradictory testimony; the verdict of the jury was clearly and manifestly against the testimony and the charge of the court, and the court therefore erred in overruling the plaintiff's motion for a new trial.

3d. It appearing from the amended answer of the defendant, that the facts charged by the said plaintiff in regard to the fraud in said sale, were admitted by said defendants, the court erred in submitting the question of fraud to the jury, and charging them in regard to the same.

4th. The court erred in rendering judgment in favor of said defendant; whereas, upon the whole record the said plaintiff is clearly and manifestly entitled to judgment in his favor.

*W. S. Oldham*, for appellants. It is conceived that the third assignment of errors is well taken.

I do not see how fraud could be more clearly established than by the admissions of defendant in his answer.

The time that the defendant had possession, and the value of the rents and profits annually, being also admitted, I contend that the plaintiff was entitled to a judgment, notwithstanding the verdict of the jury, unless the plea of the statute of limitations of three years amounts to an avoidance.

Assuming the transaction to be fraudulent, and which does not admit of any doubt, the question then presents.itself: will three years possession under such fraudulent title operate as a bar under the statute of limitations, in favor of the party holding such possession?

The cases cited by defendant's counsel in the court below to prove that a possession under a fraudulent deed will be protected under the statute of limitations, refer to our five years statute of limitations, and not to that of three years. There is a difference between our statute of limitation, and those of other States. Ours fixes three different periods for different classes of cases. 1st. Three years, where the defendant holds under *title* or *color* of *title*, both of which are *defined*. 2d. Five years, where he holds under a *deed* duly *registered*, with cultivation and payment of taxes; and—3d. Ten years naked possession without evidence of title. (Hart. Dig., arts. 2,391, 2,392 and 2,393.)

The statutes of other States fix but one period, and do not attempt, according to my recollection, to define what amounts to color of title.

Decisions upon those statutes cannot amount to authority in construing our statute of three years. Its meaning must be deduced by an application of the plain rules of evidence.

The deed of Burditt does not come within the statutory definition either of title or color of title. It is not " a regular chain of transfer from and under the sovereignty of the soil." A chain of title, of which one of the links or deeds is fraudulent, cannot be said to be regular. The patent passed the fee to Silsbee; the deed to Burditt, being fraudulent, transferred no *title*. Hence the distinction between the three and five years statutes.; the first requires a " *title*," the second a " deed." Burditt's *deed* did not connect him with the title vested in Silsbee by the patent; a fraudulent deed conveys no *title*. The court will not require authorities to prove that proposition. If it did not vest the title, Burditt cannot be said to hold under a " regular chain of transfer."

It does not come within the definition of " color of title," because the fraud in its execution " extends to," and " includes" " the want of," " intrinsic fairness and honesty." Hence it does

not amount to a " title," or "*color* of title," under the three years statute, but may be good as a *deed* under that of five years.

*W. L. & Chas. L. Robards*, also for appellants.

*Chandler, Turner & Scott*, for appellees. Our first inquiry is, whether Burditt has a regular chain of title from and under the sovereignty of the soil to the land in controversy; for if he has such character of title, his plea of the three years statute of limitation is good.

Whatever a party does by his agent, within the proper scope of the agent's authority, he does by himself, and he and his subsequent legal representatives are bound thereby.

The administrator is the agent whom the law appoints to represent the deceased, whose acts under the supervision of the Probate Court, and in conformity to law, bind the estate of the deceased as effectually as his own acts during life could have done.

In this case this court has held the appointment of Reese by the Probate Court of Bastrop county, legal, valid and binding. (15 T. R., p. 614.)

No fraud is alleged or proven in connection with Reese's appointment, which would vitiate it.

The sale of the land in controversy was made in pursuance of the order of the Probate Court, and confirmed by said court. In this mode Burditt acquired a title, regular, consecutive and legal. *If* the deed to Burdett *is* fraudulent—which we deny—it is not void, but only voidable, (7th Bacon's abridgment, pages 64 to 67; Shep. Touch., ch. 4, p. 60, 61; Anderson v. Roberts, 18th Johnson, 527; Prigg v. Adams, 2 Salk., 674,) and therefore Burditt's three years possession will perfect his title.

A regular chain of title, fair on its face, good when tested by itself, and not tried by other adverse titles, or impeached for extrinsic causes, is such title as the statute of limitations will protect, whether tainted with fraud or not. (Skyle's heirs v. King's heirs, 2 A. K. Mar. Ky. R., 753.)

The qualification contained in our statute applies to color of title, and cannot apply in this case, for we have proven that Burditt claims under title, and not color of title.

There is nothing, therefore, in said statute applicable to this case which substantially differs from the statutes of limitations of other States.

It will be noticed that the enacting clause of the law, under which defendant claims protection, being general in its terms, must be generally and liberally construed by the courts. (Beckford *et als.* v. Wade, 17 Veasey, 86.)    Burditt's title is, in every respect, sufficient to protect him, under our statute of three years. (Alex. Porter's lessee v. Thos. Cocke, page 30 of Peck's R.)

The doctrine that every *latent* vice, or hidden defect, in a regular chain of title, may, after the lapse of three years, be shown to defeat the operation of the statute, is subversive of the policy of all statutes of limitation, and in the teeth of the decisions of this court, which has heretofore held that the statute was made to aid bad titles, and that good ones needed no support. (Charles v. Saffold, 13th T. R., 109.)

The idea that the fraud alleged in this case, if clearly proven, would relieve the same from the operation of the statute, is founded in a misconception of the true policy and correct principle of the laws of the limitation of actions.    (Humber v. Trinity Church, 14 Wendell, 586; Dozier v. Ellis, 28 Miss., 737 ; Prior v. Reyburn, 16th Ark., 694; Reeves v. Dougherty, 7 Yerger, 233; Mercein v. Burton, 17 T. R., 206 ; Prewitt v. Buckingham, 28 Miss., 98 and 99.)

The position of counsel for intervenors, that Burditt's deed from the administrator is fraudulent and void, and that Burditt holds as trustee for the rightful owner, and that the trust is not affected by the statute of limitations, is erroneous.

The rule fairly deduced from the decisions of the courts of chancery, is that a trust, not subject to the statute of limitations, is " that creature of a court of equity of which the common law takes no notice, and over which courts of equity have an original, peculiar, and exclusive jurisdiction."    (Stewart v. Melish, 2 Atk., 610; 1 Madd., Tr., 359 ; 1 Bro., 554; Precedents in Ch., 218; Prewett v. Buckingham, 28 Miss., 98, 99 ; Kane v. Bloodgood, 7 Johns., Ch. R. 109; Tinnen v. Mebane, 10 Tex., 252.)

The plaintiffs and intervenors had at all times an ample remedy

at law, and in such case the uniform rule is, the statute runs.

For the sake of argument we assert that under the wording of our statute, the actual adverse holder under a void chain of title from and under the sovereignty of the soil, is protected in his possession, and the remedy of the legal owner is barred after the lapse of three years. (Pillow v. Roberts, 13 How., 477; Charles v. Saffold, 13th Tex., 109.)

*A. J. Hamilton,* also for appellees.

ROBERTS, J. This cause was before this court by the name of Burditt v. Silsbee, and reported in the 15th volume of Texas Reports, 604, where a full statement of the facts will be found, except those which relate to the proof of fraud in Burditt's title.

In the opinion in that case, it was said that "if the plaintiff can prove, as he insists, that there was fraud in the sale, to which the defendant was privy, or of which he is chargeable with notice, then, it is true, his title will not protect him either in his possession or his improvements. But if the sale was fairly made, and the defendant was a *bona fide* purchaser for value, his title will not be affected by the irregularities in the proceedings of the administrator and the Probate Courts." (Ib., 620.)

By an amendment the plaintiff pleaded fraud in the procurement of the deed by defendant Burditt, and defendant pleaded the statute of limitations of three years. A verdict was rendered for defendant.

Defendant does not admit facts which constitute him a fraudulent purchaser, as contended for by the counsel for plaintiff, for he nowhere admits that the land sold for less than its market value at the administrator's sale, or that his purchase in any way prevented other persons from bidding more for the land than he did.

Whatever may be said about the sufficiency of the proof upon the issue of fraud, the defendant showed that he had been in possession of the land for three years before the institution of the suit, holding by a regular chain of title from and under the sovereignty of the soil. And if that is a good defence in this case, he is entitled to the verdict which he obtained, though that might

be contrary to the view of the law entertained and announced in the charge of the court.

We think it is a good defence, notwithstanding the jury might have believed that the fraud in Burditt's deed was sufficiently proved. As a mere question of the validity of Burditt's title, it is true, as stated in the opinion above quoted, the plaintiff was in a situation to avoid Burditt's deed for fraud and have it set aside, being the administrator of Silsbee's estate. Had some one else brought suit against Burditt, claiming the land, not under Silsbee, but under a junior patent granted to some one else, then he would not have been in a situation to avoid Burditt's deed for fraud. It was in this point of view that the remark was made in the opinion quoted, that plaintiff could avoid Burditt's deed by showing it to be fraudulent. It was made with reference to the validity of Burditt's title, and not with reference to its capacity to support the defence of the statute of limitations of three years. It simply asserted the principle that Burditt's deed was voidable, and the facts which constituted its voidableness could be shown in this suit, so as to have the legal title divested out of Burditt and returned to the heirs or devisees of Silsbee. The administrator having power to sell, and having sold the land, the legal title passed to Burditt, and from the time it was recorded he held under a regular chain of title from and under the sovereignty of the soil. It was a good and valid title against all the world, except the administrator of Silsbee's estate or the heirs or devisees of Silsbee. As to them it was voidable, not void. As to them it stood *prima facie* as a good title, until they should institute a suit in some competent court, and show such facts as would establish, not that the legal title had not passed, but that Burditt had fraudulently obtained the legal title to the land, and thereby obtain a judgment of recovery setting aside the deed and re-investing the title in those thus shown by the adjudication to be equitably entitled to it. The evidence of the true facts relating to such a transaction is as liable to be lost by lapse of time as of those relating to any other, and therefore it is just as reasonable that some limitation should be fixed for the institution of such a suit as any other.

The law has fixed three years where the purchaser goes into

possession, holding under such voidable title. (O. & W. Dig., art. 1,328.) Such a party holds for himself, and not in trust for his vendor, and therefore his possession is adverse. It may be the inferior title as compared to that which the vendor can assert; still it is a title until destroyed by the establishment of the superior title.

The leading object and effect of the statute of limitations are to make three years adverse possession of land mature the inferior title in the hands of the possessor into the superior title. (Porter's lessee v. Cocke, Peck's R. 30; Humbert v. Trinity Church, 24 Wend. R., 586.)

We do not decide this case upon any other principle than those which would govern us were Burditt's only a color of title instead of a title. The terms "intrinsic fairness and honesty," embraced in the definition of color of title in our statute, relate to the means of proving the right of property in the land, so as to make the title equitably equal to a regular chain.

Judgment affirmed.