## ·HANNER *v.* MOULTON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF TEXAS.

No. 171. Argued and submitted January 28, 29, 1891. — Decided March 2, 1891.

In this case it was held that a suit in- equity, by persons claiming·lands in
Texas, under a will, to set aside deeds under which the defendants
claimed title, through a sale by an administrator of the testator with the
will annexed, was barred by the laches of the plaintiffs. ·

IN EQUITY.    The case is stated in the· opinion.

*Mr. James D. Park* for appellants.

· *Mr. Sawnie Robertson*, for appellees, submitted on his brief.

MR. JUSTICE BLATCHFORD .delivered the opinion of the court.

· This is a bill in equity,· filed January 27, 1882, in the Circuit
Court of the United-States for the Northern District of Texas,
by John W. Hanner, Jr., James D. Park, and John S. Park,
Jr., against Lewman G. Moulton, M. C. Moulton, C. R. Beaty,
Clement R. Johns, J. C. Kerby, Flavius Everett, W. Von
Rosenburg, and the corporation of C. R. Johns & Company,
to establish the title of the plaintiffs to three several tracts
of land in the State of Texas, one-of 586 acres in Ellis County,
one of 640 acres in Falls County, and one of 250 acres in Clay
County.    The bill prayed that the deeds under which the
defendants claimed title to such land might be declared null
and void.    The plaintiffs asserted title to it as devisees under
the will of Thomas Park, who died in the State of Tennessee,
where he resided, on September 4, 1866, leaving a last will
and testament, executed March 20, 1866, one clause of which.
was as follows: " I will to John W. Hanner, Junior, James
Park, and John Park, Junior, my tract of land, containing
near fifteen hundred acres first-rate land, lying, I believe, in
Ellis County, Texas.    My papers are in the hands of J. A. N.

Murray and William H. Gill, of Clarksville, Texas, who must account for all papers of mine found in the hands of William A. Park's widow at his death. All other lands I may own, and not disposed of by will, may be given to Dr. Jas. P. Hanner."

The testator did not own at any time any land in Ellis County, Texas, and the defendants insisted that he did not own any other land in Texas to which the devise referred or could refer ; but at the time of his death he owned what was called a head-right certificate for one-third of a league, or 1476 acres, of land, issued by the Republic of Texas, May 3, 1838, to William H. Ewing, Ewing having conveyed to the testator, by deed dated April 9, 1846, all his right, title and interest to the land which had been or might be located and surveyed by virtue of such head-right certificate, the deed warranting to the grantee the peaceable possession of the land against all claims to be made under the grantor. By a codicil to his will, executed August 25, 1866, the testator appointed James P. Hanner his executor. The will was admitted to probate in the probate court in Tennessee, and letters testamentary thereon were issued to James P. Hanner.

Subsequently, and on July 8, 1867, at the instance of the Tennessee executor, Clement R. Johns, one of the defendants in this suit, applied to the county judge of Travis County, in the State of Texas, sitting as a probate court, praying that letters of administration might be issued to him o the estate of James Park, with the will annexed, and produced a certified copy of the will, with satisfactory evidence of the probate thereof in Tennessee; and it was admitted to probate in Texas, and letters of administration with the will annexed were granted to Johns, at the July term, 1867. At the same term, he presented to the probate court of Travis County an inventory of the estate, which did not include the 1476 acres, but stated that there were other lands in the State claimed by the heirs, which would be reported by him as soon as a knowledge of the same could be obtained by him sufficient to identify them. On January 1, 1869, Johns filed in the probate court a supplemental inventory, which stated that, since filing the original inventory, he had found a land certificate belonging

to the estate, for one-third of a league, or 1476 acres, granted to W. H. Ewing and transferred by the latter to James Park, and which was appraised January 1, 1869, by appraisers appointed by the court, at the value of $200; and that that was all the additional property to which title had been discovered. He further stated that, the certificate being lost, he had obtained a duplicate of it, and asked for an order to sell it, to pay the expenses of administration and the expenses of looking up the estate, which then amounted to over $100. The court thereupon made an order that he proceed to sell the land certificate, for cash, on the first Tuesday in February, 1869, after giving due notice. On the 26th of February, 1869, on the representation of the administrator to the court that by accidental omission the sale had not taken place, it made an order that he sell the certificate for cash on the first Tuesday in April, 1869, on giving due notice; and that he return an account of sale to the court. On the 3d of June, 1869, he reported to the court that on the first Tuesday in April, 1869, he had sold the certificate, as the property of the estate, to J. C. Kerby, the highest and best bidder, for 7½ cents per acre, making, for the 1476 acres, $110.70, which he stated he believed to be a fair price, under the circumstances connected with the title; and he recommended a confirmation of the sale. Thereupon, on the same day, the court made an order approving and confirming the sale, and directing the administrator to divest title out of the former owner and to vest it in the purchaser, after his compliance with the terms of sale.

In October, 1871, Johns, as administrator, presented to the county court of Travis County his account of debits and credits, showing, among other things, the receipt of the $110.70 for the "sale of one-third-league cert. doubtful title," and a balance on hand, belonging to the estate, of $11.38 in United States currency, and representing "that all the property of the said estate of James Park, except the land certificate which was found by the administrator, has been disposed of by the last will of the deceased," and asking to be discharged. No action appears to have been had by the court in regard to this account or to a discharge. Kerby, the pur-

chaser, afterwards located the certificate on the three tracts of land above mentioned.

On August 28, 1882, an amended and supplemental bill was filed by the plaintiffs, adding as defendants James P. Hanner, the Tennessee executor, Robert Smith, Thomas D. Johns, W. B. Blalock and A. J. P. Johnson. The gravamen of the two bills was, that the proceedings of Clement R. Johns, the Texas administrator, in the probate court of Travis County, by which he obtained the order for the sale of the certificate, and the sale itself, were fraudulent; that Kerby, the purchaser, had knowledge of and participated in the fraud; and that the other defendants, who were in possession of the three tracts of land, claiming title to them under Kerby, bought with notice of the fraud.

Answers to the bill were put in by James P. Hanner, Kerby, Clement R. Johns, Von Rosenburg, Everett, Beaty, the two Moultons, Smith, Blalock and Johnson. M. C. Moulton having died, the suit was revived against his devisees, legatees and executor. Thomas D. Johns, and the executor and devisees of M. C. Moulton, subsequently answered the bill. It was set up in the answer of Beaty, that the claim of the plaintiffs was barred by the laws of limitation of Texas before the commencement of the suit, and that the demand was stale; and in the answer of M. C. Moulton, that the claim of the plaintiffs, if any they ever had, was stale, on account of their laches and gross and inexcusable neglect to make known or assert their claim; and in the answers of Smith and Johnson, that the suit was barred by the statutes of limitation of Texas; and in the answer of Clement R. Johns, that the claim of the plaintiffs was stale and barred by reason of laches; and in the answer of Kerby, that the plaintiffs' demand was stale and barred by the law of limitations.

Replications having been filed to the various answers, proofs were taken, and the cause was heard before Mr. Justice Woods, and Judge McCormick, District Judge, and on the 10th of February, 1885, a decree was entered dismissing the bill. The opinion of Mr. Justice Woods is reported in 23 Fed. Rep. 5. He disposed of the case on the following ground, as stated in

his opinion: "Upon the trial of the case, the plaintiffs, conceding that the testator at his death owned no land in Ellis County, or elsewhere in Texas, to which said devise referred, to prevent the devise from being inoperative, and to prove their title to the lands in question, offered evidence tending to show that the testator, when he executed his will, and at the time of his death, believed that the Ewing head-right certificate had been located in Ellis County, making him the owner of the lands covered thereby; that it was the purpose of the testator, shown by his declarations to and conversations with the witnesses, to devise to the plaintiffs the Ewing certificate, if it should turn out that it had not been located; and that he was advised by the lawyer who drew his will that the devise above quoted would be effectual to carry out such purpose. The contention of the plaintiffs was, that if this evidence was admitted, it would show them to be the owners of the Ewing head-right certificate under the devise in the will of James Park, and establish their title to the lands located by Kerby under that certificate. It is evident that the title of the plaintiffs to the relief prayed by their bill depends upon the admissibility of this evidence. The defendants object to the testimony. I am of opinion that the objection is well taken, and that the evidence should be excluded." He further said: "I think this is a case for the enforcement of the rule which excludes parol evidence to alter or add to the terms of a will. I am, therefore, of opinion that the evidence offered should be excluded. Without its aid, the plaintiffs show no ground for the relief prayed in their bill. It must therefore be dismissed, at their costs; and it is so ordered."

We do not find it necessary to consider the case in the view in which the Circuit Court considered it; for we are of opinion that the claim of the plaintiffs must fail on the ground of laches.

Patents were issued by the State of Texas for the three tracts of land in question in the name of James Park, assignee of William H. Ewing, "his heirs or assigns forever," as follows: February 17, 1870, for the 586 acres in Ellis County; March 5,

1870, for the 640 acres in Falls County; and June 24, 1873, for the 250 acres in Clay County; and such patents were duly recorded in the respective counties. It was a custom in the land office of Texas not to issue patents to assignees who derived their title through a judicial sale, and therefore all these patents were issued in the name of James Park.

In 1876, the plaintiffs put a tenant in possession of a large part of the 586 acres in Ellis County, and L. G. Moulton, who claimed title to the land, brought an action of trespass to try title against the tenant, in the District Court of Ellis County, on March 27, 1879; which suit was removed into the Circuit Court of the United States for the Northern District of Texas. The plaintiffs in the present suit were made parties defendant to that suit, and part of the prayer of the bill in the present suit is to enjoin such action at law of L. G. Moulton.

Kerby was the holder of the legal title to the certificate and the legal title to the land; and he and the defendants who derived their title from him became the owners of such legal title. This was so, even if the sale was fraudulent. If the certificate was by the will bequeathed to the plaintiffs, and even if the sale was fraudulent, the interest which the plaintiffs had, after the sale of the certificate, was not an interest of any kind, legal or equitable, in it or in the land, but only the right promptly to disaffirm the sale and institute a proceeding, in a reasonable time, to have it set aside, and thus reacquire the certificate or the land located under it. Perry on Trusts, § 602*w*; 2 Pomeroy's Equity, §§ 818, 917; 2 Story's Eq. Jur. § 1520; *Pearson* v. *Burditt*, 26 Texas, 157.

The sale in question was confirmed by a proper decree of the probate court of Travis County. Limitation of the right of review was two years after the date of the decree. Rev. Stat. of Texas, Article 1389, enacted in 1846.

Further, a bill to review a decree in equity was authorized by the act of February 5, 1841, (1 Paschal's Dig. p. 764, Article 4616,) if brought not more than two years after the decree should have been made final. This applies to proceedings in the probate court. *Kleinecke* v. *Woodward*, 42 Texas, 311; *Murchison* v. *White*, 54 Texas, 78, 86.

Since 1841, 1 Paschal's Dig. p. 758, Article 4604, the limitation of a suit in Texas to recover personal property, or damages for its conversion, has been two years; and by 1 Paschal's Digest, p. 766, Article 4622, three years bars a suit for land if the defendant has color of title. All of these defendants had color of title, within the meaning of that statute. By 1 Paschal's Digest, p. 767, Article 4623, a suit for land, if the defendant claims under a registered deed, is barred in five years. By the Revised Statutes of Texas, Article 3209, p. 465, a suit for the specific performance of a contract to convey real estate is barred in ten years, ten years being the longest period of limitation under the statutes of Texas.

In the present case, there is no question of minority or of any other disability. It is alleged, however, that the cause of action was concealed; but the order of sale, the report of sale, and the order confirming the sale, were of record in the probate court of Travis County. The plaintiffs knew, or had the means of knowing, of the granting of administration in Texas, and in what court the proceeding was pending. The administrator reported that Kerby was the purchaser. The connection of Kerby with C. R. Johns & Company was no secret. The records of the land office of the State showed, as early as March 23, 1870, that a certificate for the unlocated balance, which was afterwards located in Clay County, had been delivered to C. R. Johns & Company. On the information disclosed by those records, the plaintiffs in 1876 assumed to own the 586 acres of land in Ellis County, and sold part of it and leased the rest. This was done under a power of attorney executed by the three plaintiffs, on February 15, 1876, to Cyrus T. Hogan, a real estate agent of Ellis County, Texas, constituting him their agent to sell the 586 acres in that county, and to sign their names to transfers and releases necessary to confer the title to the land; and they executed a further power of attorney to Hogan, on September 25, 1876, authorizing him to sell and convey all their interest in the W. H. Ewing one-third league survey or certificate, wherever it might be located in the State of Texas, as having been willed to them by James Park, and to perform all legal acts in the

management of the certificate, or the land located by virtue of it, and to sign their names to conveyances of any nature or kind.

It is stated in the original bill that neither the plaintiffs nor the Tennessee executor ever heard of the settlement of October, 1871, by Johns, as administrator, in the probate court, in October, 1871, until about the year 1877 or the latter part of 1876, when the knowledge first came to them through information from their agent in Ellis County, Texas. That agent was Hogan. James D. Park, one of the plaintiffs, in his testimony, produces a letter from Hogan, dated September 20, 1876, to Doctor John S. Park, and states that he first learned through that letter that the firm of C. R. Johns & Company were claiming the land in Ellis County, and also the remainder of the land called for by the certificate, some of which was in Falls County. Doctor John S. Park was a witness in the case, and was a nephew of the testator, an uncle of the plaintiff John W. Hanner, Jr., and the father of the other two plaintiffs. In that letter, Hogan informed Doctor Park that C. R. Johns administered on the estate of James Park in 1869, and sold the W. H. Ewing certificate to J. C. Kerby; and that, on an examination of the record, he, Hogan, found a transfer from Johns, as administrator, to Kerby. On the 26th of September, 1876, Hogan wrote another letter to Doctor John S. Park, which is produced, stating that a lawyer, whom Hogan had consulted on the subject of the sale of the Ewing certificate by Johns, as administrator, said that it would not "stick at all," but advised action at once.

If the plaintiffs, in 1876, on the information disclosed by the records, assumed to own, to sell a part of, and to lease another part of, the 586 acres of land in Ellis County, thus acting on the view that the sale did not deprive them of their interest in the land, the same information was sufficient to demand and to justify a suit. The explanation of the delay may be connected with the fact, that the certificate, when it was sold, was valued at $200, while, when the bill in the present case was filed, the three tracts of land were worth, as is testified, from $8600 to $10,600.

Moreover, the evidence shows that in January, 1871, James D. Park, one of the plaintiffs, was in Austin, Texas, saw Clement R. Johns, went to the land office and looked at the record books, and found in one of them an entry that the balance of the Ewing claim, not patented, had been delivered to C. R. Johns & Company on the 23d of March, 1870; that he afterwards had an interview with Clement R. Johns on the subject and told him what he had seen at the land office, and asked him if he knew what had ever become of the Ewing certificate; and that he learned from Johns that a duplicate of it, for one-third of a league, had been sold at public auction in Austin, in 1868, by Johns, as administrator of James Park, to pay expenses, etc., of administration. James D. Park states in his testimony, that the transaction ought to have been investigated then and there, and gives as an excuse for not doing so, that Johns treated the matter very lightly, and as of little or no consequence, and also stated that he did not recollect who was the purchaser of the certificate. He also testifies, that, on returning to Tennessee, he mentioned to the Tennessee executor and to others of the family, what had occurred at Austin, and requested the executor to write to Mr. Green, a lawyer at Austin, to look into the sale of the Ewing certificate, and see if it could not be got back in some way or replaced by Johns; that the executor got letters from Mr. Green, promising to look into the matter, but nothing further or definite was done or reported to the executor, "the parties probably being too much engaged in other matters to give it proper attention;" that through Hogan he learned, in 1876 or 1875, that a portion of the Ewing certificate had been located in Ellis County, and that a patent was on record there to James Park and his heirs for 586 acres of the Ewing certificate; and that his father then wrote to Hogan to take possession of the land for the plaintiffs, and instructed Hogan to investigate the sources of the supposed title of C. R. Johns & Company to the lands, and report the results, after which Doctor John S. Park received from Hogan the letters of September 20 and September 26, 1876, followed soon afterwards by a paper sent by Hogan to the witness, which was a copy

obtained from the public records of Ellis County, and which is produced, showing that it was a copy of the conveyance made by Johns, as administrator, to Kerby, of the certificate, and which recited that he had sold the certificate, on the 6th of April, 1869, to Kerby, for $110.70, and that the sale had been confirmed by the court at the May term, 1869.

Even in 1876, when the plaintiffs knew all that they knew when they filed the bill in 1882, and had no title but only the right to go into a court of equity, they brought no suit, but contented themselves with assuming that they owned the 586 acres in Ellis County. Their assuming possession of that tract of land did not excuse them from prosecuting a suit. *Walet* v. *Haskins*, 68 Texas, 418 ; *Bullock* v. *Smith*, 72 Texas, 545, 549.

An interval of nearly thirteen years elapsed between the sale of the certificate and the filing of the bill in this suit. The value of the property has largely increased. Parties interested and witnesses have died, and the memory of those who survive has decayed. Not a person who is now interested in any of the land is implicated in the fraud charged in the bill. Under the facts above stated, the plaintiffs have been guilty of such laches that they cannot have any relief in a court of equity. *Speidel* v. *Henrici*, 120 U. S. 377, 387, and cases there cited ; *Richards* v. *Mackall*, 124 U. S. 183, 187, 188.

Nor are the decisions of the courts of Texas inconsistent with the sustaining of this defence of laches. In *Fisher* v. *Wood*, 65 Texas, 199, it was held that a party would be relieved from the charge of laches, where facts were shown calculated to lull inquiry, and the fraud was not discovered until about three months before the suit was brought. In *Rowe* v. *Horton*, 65 Texas, 89, as against a claim to relief in equity against a deed where more than ten years had elapsed between the date of its execution and the bringing of the suit, it was held that the plaintiff might, by reasonable diligence, have sooner discovered the mistake which was the alleged ground of relief, although it was not in fact discovered by her until within a few months before the suit was brought ; and the same doctrine was applied in *Parish* v. *Alston*, 65 Texas, 194.

*Decree affirmed.*