SHOHL, J.
Tbe plaintiff, John N. Bussell, administrator of the estate of J. N. Bussell, deceased, brought an action in the superior court of Cincinnati against the Fourth National Bank for equitable relief. The elder Bussell in 1865 became the owner of thirty shares of the capital stock of the defendant bank. Dividends were paid to him semi-annually in May and November during that year and the year following, and never afterwards. From that time until the summer of 1889 he resided with his family in *440 Linwood, Hamilton county, Ohio. He then moved to Portland, Oregon, and lived there until his death, June 8, 1895. As he left no apparent estate, there was no administration. During the summer of 1911, his son, the administrator herein, in looking over some old papers, discovered a certificate for thirty shares of the stock of the Fourth National Bank. It- had never been can-celled. Later, after his appointment as administrator by the probate court of Multnonah county, Oregon, he made demand on the bank for a new certificate and for an accounting for the dividends on the stock since 1866. The bank refused to recognize any ownership of the stock in the decedent or his administrator and this action was accordingly brought in December, 1912.
The stock book of the bank containing transactions prior to 1872 has been lost since 1906, when the bank moved to a new location, but the defendant offered in evidence the stock ledger for the years 1865-1867, the dividend receipt book, and now offer in evidence a certified copy of the report filed with the comptroller of the currency of the United States, in accordance with Sec. 5210 U. S. R. S. The stock ledger is offered for the purpose of showing that Russell disposed of his shares to W. F. Colburn, January 9, 1867. The dividend receipt book was offered for the purpose of showing that Colburn received the dividends on this stock after that date.
During the period in which Russell resided at Linwood, the evidence shows that he was in reduced circumstances, and he remained poor up to the time of his death.
The judgment in favor of the defendant at the first trial was based upon the finding of the court that the plaintiff is not the owner of the shares of stock represented by tha certificate in his possession. This judgment was reversed by the court of appeals, which rendered an opinion, holding that the court erred in admitting the stock ledger in evidence. The court, however, said at the conclusion of its opinion:
“In regard to the other defenses alleged in the answer— those of laches and the barring of the action by limitation or lapse of time — we desire to say no more than that none of them seems to us to be of merit to control the conclusions otherwise reached here, and they are denied.”
*441 A new trial was ordered. At the second trial on additional evidence as to the entries, the stock ledger was admitted in evidence and judgment was again rendered in favor of the bank. To this, error was prosecuted to this court and the case was again reversed. The court in the entry of judgment purported to make certain findings of fact in favor of the administrator. The case was remanded ‘ ‘ for such further proceedings in accordance with the above findings as is authorizéd by law. ’ ’ Application- was made to the Supreme Court to direct the court of appeals to certify its record and the application was refused.
Pursuant to the mandate of the court of appeals, the case was then heard for the third time in the superior court, where the defendant made certain admissions as to the market value of the stock and the dividends that had been declared and paid since 1867. The defendant offered proof of its case on the merits but the court rejected it and rendered a decree “that the plaintiff recover from the defendant the sum of $23,619.38” with interest and costs. The defendant then filed an appeal from this decree, and this ease is now heard in this court on appeal, as distinguished from error, for the first time.
The plaintiff here offered in evidence proof of the value of the stock and dividends, and rested, maintaining that the law of the case had been established and nothing more remained to be done but to supply what was missing from the facts already conclusively determined in this court. Later the court permitted the case to be reopened and evidence on all the foregoing was offered.
We must determine the effect of the findings contained in the former judgment entry in the error proceedings in this court. But first let us ascertain the nature of an appeal under the Ohio constitution. Appellate jurisdiction in chancery cases is granted by Art. 4, Sec. 6, of the amended constitution, and this jurisdiction cannot be enlarged or diminished by statute. Cincinnati Polyclinic v. Balch, 92 Ohio St. 415 [111 N. E. 159]; Wagner v. Armstrong, 93 Ohio St. 443 [113 N. E. 397].
There is no doubt but that the case at bar is a chancery case. An appeal under the Ohio law differs radically from the system of appeals in chancery in England, where the ease is presented *442 on the record of the trial below. By the Act of February 16, 1810, 1 Chase, 705, 712, it was provided (Sec. 44) :
“That when any cause is removed by appeal into the Supreme Court, the appeal shall be tried on the pleadings made up in the court of common pleas, unless on good cause shown, and on payment of costs, the said court should permit either or both parties to alter their pleadings, in which case such court shall lay the parties under such equitable rules and restrictions as they may conceive necessary, to prevent delay. ’ ’
This section continued in force through the various revisions' until the constitution of 1852 was adopted, and it was then continued with the changes made necessary by the substitution of the district courts for the Supreme Court sitting in the circuit. See 2 Swan and Critchfield, 1161, 1169. When the code of practice of 1878 was passed the provision was re-enacted, 75 O. L. 648, Sec. 65:
“The district court shall have jurisdiction of certain eases, as hereinafter mentioned, by appeal, and the trial therein shall be conducted in the same manner as in the court of common pleas, and upon the same pleadings, unless amendments are permitted or ordered by the court. ’ ’
That act has been carried forward into See. 5225 R. S., and into Sec. 12223 G-. C., as amended 103 O. L., 429.
Unlike the English system of appeals, an appeal in Ohio is a new trial on pleadings which may be different, if the court so permits, and upon new evidence. This has been the Ohio practice throughout all of its legal history. See Grant v. Ludlow, 8 Ohio St. 1, 30, and Mason v. Alexander, 44 Ohio St. 318, 327 [7 N. E. 435], When the phrase “appellate jurisdiction” in the trial of chancery eases was adopted in the constitution of 1912, there was thereby adopted a phrase already construed, which is taken with its established construction.
The defendant, therefore, is entitled to a trial on the pleadings. What then, is the effect of the so called findings in the judgment entered by this court in the error proceedings the second time that the case was before it for review? The authorities already referred to establish that the powers of the Court of Appeals are derived solely from the constitutional provision. *443 The court is authorized in error cases to review, affirm, modify or reverse judgments of the lower courts. There is no authority cited which establishes the power to make findings in an error case as to disputed questions of facts or questions from which different inferences of fact may be drawn from the matters proved. The authoritative decisions are that the court must order a new trial on such disputed questions of fact. Hickman v. Ohio State Ins. Co., 92 Ohio St. 87 [110 N. E. 547]; Minnear v. Holloway, 56 Ohio St. 148 [46 N. E. 636]; Gay v. Davey, 47 Ohio St. 396 [25 N. E. 425]; Miller v. Sullivan, 26 Ohio St. 639; Emery’s Sons v. Irving Nat’l Bank, 25 Ohio St. 360 [18 Am. Rep. 299]; Stivers v. Borden, 20 Ohio St. 232.
We are of opinion, therefore, that the court was without authority to make the findings contained in the judgment of reversal hereinbefore rendered. The right of this court to reconsider and review its own decision in this case is challenged by the plaintiff, and the so called doctrine of “the law of the case” has been urged. It is stated that a prior decision is conclusive upon a subsequent appeal of a case in the same court even if it is erroneous, and that propositions of law once decided by an appellate court are not open for reconsideration in that court upon a subsequent appeal. This subject is treated by note in 1 A. L. R. 1267. The court is of opinion that the better rule is that laid down by the Supreme Court of the United States in Messenger v. Anderson, 225 U. S. 436 [56 L. Ed. 1152], wherein the court say:
“In the absence of statute the phrase, law of the case, as applied to the effect of previous order on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.” King v. West Virginia, 216 U. S. 92, 100 [54 L. Ed. 396]; Remington v. Central Pac. Ry., 198 U. S. 95, 99, 100 [49 L. Ed. 959]; Great Western Telegraph Co. v. Burnham, 162 U. S. 339, 343 [40 L. Ed. 991],
It is not conducive to the orderly administration of justice that questions of law once decided should be reopened upon a reconsideration of the case in the same court, and regardless of the fact that the personnel of the court may have changed, the former decision will be adhered to, unless it is very clearly erron *444 eous, as stated in Platt v. Pennsylvania Co., 47 Ohio St. 366, 379 [25 N. E. 1028]. The reviewing court, however, has the power to redetermine matters adjudged on a previous appeal or writ of error, and may reopen what has been decided.
We are impelled to the conclusion that the making of the findings in question was improper and not within the jurisdiction of the court. Though a court may possess jurisdiction of a cause, of the subject matter, and of the parties it is still limited in its modes of procedure, and in the extent and character of its judgments, and if it- renders a judgment which is not within the powers granted to it by the law of its organization, the judgment is void. See Standard Oil Co. v. Missouri, 224 U. S. 270, 281, 282 [56 L. Ed. 760], Works, Courts, 2nd Ed. Sec. 8; Windsor v. McVeigh, 93 U. S. 274, 282 [23 L. Ed. 914], The order to the superior court for “such further proceedings in accordance with the above findings as is authorized by law, ’ ’ could mean no more than a simple reversal with instructions to grant a new trial according to law. Hovey v. Elliott, 145 N. Y. 126 [39 N. E. 841; 39 L. R. A. 449], affirmed. Hovey v. Elliott, 167 U. S. 409 [17 S. Ct. 841; 42 L. Ed. 215].
In view of our determination that this court has the right to re-examine and reconsider questions already determined herein, we have taken up those matters that have already been discussed in the opinions of this court with great care.
This court has twice held that the ledger offered for the purpose of showing the transfer to Colburn was inadmissible. We are of opinion that this ruling is not so clearly erroneous that it should not be followed at this hearing.
The defendant has set up the defense of the statute of limitations. We will consider its effect separately as to dividends and as to the stock itself. When a corporation properly declares a dividend, it becomes an ordinary debt due stockholders by the company. 2 Machen, Corporations, Sec. 1357; 2 Cook, Corporations, 7th Ed. Sec. 542. It is ordinarily stated that such dividend becomes payable on demand, and until demand and refusal, the dividend is not due the stockholder. In Larwill v. Burke, 10 Circ. Dec. 605 (19 R. 513), it was held on this principle that until the demand was made, the statute of limitations did not begin to run.
*445 In the ease at bar, however, there was a dividend declared, but not to Russell on his stock as he was not a stockholder of record. This fact is shown even without the books of the corporation by the statement which is filed with the Comptroller of the Currency. Indeed the admissibility of this evidence is not a vital question in view of the statement made in open court by counsel for plaintiff that the bank did not treat Russell as a stockholder after 1867. In their brief counsel state “and it is -not disputed by the plaintiff that ever since 1867 the Bank has considered Russell not the owner of the stock.” And again: “There is no question in anyone’s mind that the bank did not consider Russell the owner of the stock. ’ ’ That Russell was not treated as a stockholder is the foundation of plaintiff’s claim for an accounting. If the plaintiff was entitled to dividends, the corporation violated his rights when the dividend was declared by failing to declare a dividend in his favor. A declaration of dividends to stockholders of record does not create the right to bring an action in assumpsit, except by those who are such stockholders. After the declaration of dividends in 1867 and thereafter, there was no money standing to the credit of J. N. Russell and payable on demand. If there was a wrong done to him, it was done each time a distribution of dividends was made without allotting any to him. He had a right of action at that time, and, except as to such dividends arising within six years of the bringing of the action, the statute of limitations is applicable.
In the case of Stearns v. Hibben Dry Goods Co. 31 O. C. C. 257 (11 N. S. 553), the court held that the statute of limitations barred a right of action by a stockholder six years after a dividend was distributed, though he had failed to make demand at that-time. His failure to do so did not suspend the operation of the statute of limitations. The decision was affirmed no op. bjr the Supreme Court in Stearns v. Hibben Dry Goods Co., 84 Ohio St. 470. And see Clark & Marshall, Corporations, Section 527; Re Severn & Wye Ry., L. R. 1 Ch. Div., 559.
As to dividends more than six years prior to the bringing of this suit the plaintiff is barred by the statute of limitations.
Let us now take up the defense of limitations upon plaintiff’s right to the stock as distinguished from the-dividends. The relation of a stockholder to his corporation sounds in contract, *446 and Ms rigM is in the nature of a chose in action. 1 Morawetz, Corporations, 2nd Ed., Secs. 43-45, Sec. 225; 1 Machen, Corporations, Sec. 832; Hawley v. Malden, 232 U. S. 1, 12 [58 L. Ed. 477]; Colonial Bank v. Whinney, L. R., 11, App. Cas., 426, 440, 447, 448.
His contractnral right cannot be rescinded without his consent, either express or implied, hence the mere execution of a transfer of his stock on the books, unknown to him, would merely destroy the evidence of the relation, but would not divest him of his rights. It does not constitute a conversion of his stock. 1 Morawetz, Corporations, 2nd Ed. 208; 1 Machen, Corporations, Sec. 854; Western Union Tel. Co. v. Davenport, 97 U. S. [24 L. Ed. 1047] 369; Pratt v. Taunton Copper Mfg. Co., 123 Mass., 110 [25 Am. Rep. 37], See Note 45 L. R. A. N. S., 1076.
However, when a corporation wrongfully transfers the stock, and the owner knows of its actions, it amounts to a repudiation of the obligation which the corporation owes to him. An express repudiation of such an obligation gives rise to a right of action immediately and starts the running of the statute of limitations against an obligee under no disability to whom such a repudiation is brought home. This is the inferential holding of Cleveland & M. Ry. v. Robbins, 35 Ohio St. 483, 502, where the owner of shares did not know of the transfer. While such knowledge need not be proved by direct testimony but may be shown by the circumstances, we are of opinion in view of all the evidence that actual knowledge on the part of Russell has not been established. While from the facts shown, there are some inferences tending to show that Russell did in fact know of the transfer of his stock, we find no preponderance of evidence to that effect. As to the stock itself, as distinguished from the dividends, the defense based on the statute of limitations must fail.
We shall now consider the question of laches. The court is of opinion that under the unexplained facts shown at the hearing here, the plaintiff is barred by laches and is not entitled to equitable relief against the defendant. During the twenty-eight years from 1867 to 1895, the plaintiff’s intestate, though in want, made no effort to assert any rights against the bank. For the first twenty-two years of this period, he lived in Cincinnati. A further period of sixteen years elapsed after his death in 1895 *447 before suit was brought. Laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time.and other circumstances, causes prejudice to the adverse party and therefore operates as a bar in a court of equity. Kemper v. Apollo Bldg. & L. Assn., 30 O. C. C. 700 (11 N. S. 372). It is founded upon the evanescent character of all testimony and the consequent difficulty of making a defense to any claim after the lapse of a number of years. See Douglas v. Corry, 46 Ohio St. 349 [21 N. E. 440; 15 Am. St. 604] ; Harris v. Wallace Mfg. Co. 84 Ohio St. 104, 108 [95 N. E. 559],
Luring the period which elapsed all those who were officers of the bank at the time the transfer of the stock was made have died. Russell’s delay until his own death deprives the bank of such evidence as he might have been required to give. Important books and records have been lost. These circumstances render peculiarly applicable the doctrine of laches. See Hanner v. Moulton, 138 U. S., 486, 495 [34 L. Ed. 1032]. In Hammond v. Hopkins, 143 U. S. 224, 250 [36 L. Ed. 134], the court says:
“No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith and reasonable diligence, but will discourage stale demands, for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has occurred. The rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of'the witness or witnesses, or by reason of the original transactions having become so obseeured by time as to render the ascertainment of the exact facts impossible. Each case must necessarily be governed by its own circumstances, since, though the lapse of a few years may be sufficient to defeat the action in one ease, a longer period may be held requisite in another dependent upon the situation of the parties, the extent of this knowledge or means of information, great changes in values, the want of probable grounds for the imputation of intentional fraud, the destruction of specific testimony, the absence of any reasonable impediment or hindrance to the assertion of the alleged rights, and the like.” Marsh v. Whitmore, 88 U. S. (21 Wall.) 178 [22 L. Ed. 482] ; Lansdale v. Smith, 106 U. S. 391 [27 L. Ed. 219] ; Norris v. Haggin, 136 U. S. 386 [34 L. Ed. 424]; Hanner v. Moulton, 138 U. S. 486 [34 L. Ed. 1032],
*448 Plaintiff urges that the intestate is not shown to have had knowledge of his rights, and, therefore, is not chargeable with neglect in failing to prosecute them. In the case of Foster v. Mansfield c. & L. M. Ry., 146 U. S. 88, 99 [36 L. Ed. 899], the court says:
“Thé defence of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove; and hence the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable-diligence to have informed himself of all the facts. Especially is this the case where the party complaining is a resident of the neighborhood in which the fraud is alleged to have taken place. ’ ’
See also Weininger v. Success Mining Co., 227 Fed., 548, 557, 558; Naylor v. Foreman Blades Lumber Co., 230 Fed. 658, 673.
There is no doubt that the elder Russell once knew that he was the owner of Fourth National Bank stock. He was a business man of experience. He resided in the neighborhood. The bank was obviously an active, going concern. He received substantial semi-annual dividends at regular intervals for two years, and then ceased to get them. The law at that time required the publication four times a year in a newspaper where the bank was established, of a report showing in detail the assets and liabilities of the company. (13 Stat. 109, 110). He must have known that the Bank held stockholders’ meetings in January, as required by statute, and by attending them he could have been informed as to its condition and why he got no further dividends.
We have considered the question of Russell’s actual knowledge of the facts, and it is referred to in dealing with the question of the statute of limitations.
For the purpose of the defense of laches, it is enough to say that unless he used reasonable diligence to have himself informed of the facts, mere ignorance will not excuse him. And a fortiori must this be true where his silence and failure to assert his rights continue for forty-five years until those persons who would naturally be able to explain and defend the conduct of the bank *449 have passed away and after the records have been lost. Under ordinary circumstances a suit in equity will not be stayed for laches before and will be stayed after the time fixed by the analogous statute of limitation at law. When a suit is brought after such statutory time has elapsed, the burden is on the plaintiff to show that it would be inequitable to apply the doctrine of laches in this case. Kelley v. Boettcher, 85 Fed., 55; Davey v. Dodge, 213 Fed., 722, 727. Neither the pleadings nor the proofs show facts which justify so great a delay. See Pomeroy, Eq. Jurisprudence, 4 Ed. page 3445 note; Shaw v. Goebel Brewing Co., 202 Fed. 408 [45 L. R. A. (N. S.) 1090] and note to same. The plaintiff’s claim for equitable relief is barred by laches.
A decree may be drawn in accordance with the foregoing.
Hamilton J. and Cushing, J., concur.