Robert K. HUMPHREY, Individually and as Executor of the Estate of Blanche Meyer Humphrey, et al., Plaintiffs-Appellants,

v.

The C. G. JUNG EDUCATIONAL CENTER OF HOUSTON et al., Defendants-Appellees.

No. 78–2927.

United States Court of Appeals, Fifth Circuit.

Aug. 21, 1980.

Rehearing Denied Oct. 22, 1980.

Lynn N. Hughes, Roy L. Wardell, W. James Kronzer, Houston, Tex., for plaintiffs-appellants.

Hutcheson & Grundy, Thomas T. Hutcheson, Thomas R. Kelsey, Houston, Tex., for defendants-appellees.

Before MORGAN, CHARLES CLARK and TATE, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

Appellants, Blanche Meyer Humphrey[1] and her children, Elizabeth Humphrey Murphy, Robert K. Humphrey, and Marjorie Hunter Humphrey, instituted this diversity action to recover title and possession of an undivided one-half interest in a parcel of land located in Houston, Texas. Appellee[2] Carolyn Fay acquired title to this property in fee simple subject to a condition subsequent that the property not be used commercially. Appellants contend that Ms. Fay's estate was destroyed when she breached the condition subsequent and appellants elected to exercise their right of entry for condition broken. The District Court for the Southern District of Texas granted appellees' motion for summary judgment, concluding that appellants' action was barred by the Texas three-year statute of limitations. Tex.Rev.Civ.Stat. Ann. art. 5507 (1958). We reverse and remand for further proceedings.

The following facts were stipulated by the parties. On February 11, 1920, Herbert K. and Blanche Meyer Humphrey and their cotenants, R. G. and Edith R. Caldwell, conveyed to Tom Randolph a tract of land on Montrose Boulevard in Houston, Texas, located in Lot F, Block 8, Turner Addition, Harris County, Texas. This deed restricted the use of the property to "residence purposes only" and prohibited the erection of "any store or shop thereon for the sale of merchandise or any other commodity." In the event the grantee violated these restrictions, the deed specified that "said land shall revert to the Grantors herein, should they so elect."

None of the restrictions in the Humphrey deed were violated prior to August 3, 1972, when the property was conveyed by General Warranty Deed to Jasper Galleries, Inc. Shortly thereafter Jasper Galleries demolished the existing residence and began construction on an 8,000 square foot art gallery building covering a majority of the property and of the adjoining Lot E in Block 8. Jasper Galleries completed construction of the building on May 1, 1972, and held its grand opening on May 10, 1973. The parties agree that beginning no later than May 10, 1973, the property was used in open, obvious, and continuous violation of the Humphrey deed restrictions. On July 25, 1975, Jasper Galleries conveyed the property (and the adjoining Lot E) to Carolyn Fay, who continued to use the property for commercial purposes.

Appellants filed their lawsuit seeking an undivided one-half interest in the property on September 3, 1976, three years and three months after the violation of the restriction commenced. Blanche Meyer Humphrey, one of the original grantors of the Humphrey deed, was a named plaintiff in the action.

After submitting joint stipulations of fact to the district court, plaintiffs and defendants filed cross motions for summary judgment. The court first determined that the 1920 Humphrey deed conveyed a fee simple on condition subsequent and reserved in the grantors an optional right to reenter and terminate the estate granted should the property ever be used for commercial purposes. The parties do not challenge this interpretation of the Humphrey deed restrictions. The court then concluded that appellants' right to reenter upon breach of

---

1. Following Blanche Meyer Humphrey's death in 1977, the district court substituted Robert K. Humphrey, the executor of her estate, as the estate's representative in this action.

2. The other appellees, the C. G. Jung Educational Center of Houston and Archway Galleries, are lessees of Carolyn Fay.

the condition subsequent was barred under the Texas three-year statute of limitations. Tex.Rev.Civ.Stat.Ann. art. 5507 (1958).[3] Accordingly, the court granted appellees' motion for summary judgment and dismissed appellants' lawsuit with prejudice.

Article 5507, Tex.Rev.Civ.Stat.Ann., provides a relatively short limitations period for certain actions to recover real estate from an adverse possessor:

> Suits to recover real estate, as against a person in peaceable and adverse possession thereof under title or color of title, shall be instituted within three years next after the cause of action accrued, and not afterward.

It is clear that appellees have established a limitations defense under this article if Carolyn Fay's possession of the property, when tacked on to the possession of her immediate predecessor, was under "title or color of title." Those terms are defined in Tex.Rev.Civ.Stat.Ann. art. 5508 (1958):

> By the term "title" is meant a regular chain of transfers from or under the sovereignty of the soil, and by "color of title" is meant a consecutive chain of such transfers down to such person in possession, without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty; or when the party in possession shall hold the same by a certificate of headright, land warrant, or land script, with a chain of transfers down to him in possession.

Appellants contend that the three-year statute of limitations does not apply to a right of entry for condition broken since the party owning a fee simple on condition subsequent cannot, under Texas law, have "title or color of title" to an interest never conveyed to him or his predecessor in title. Appellees reject this contention and argue that the district court correctly determined that the Humphreys forfeited their right to enforce the condition subsequent.[4]

Although the terms "title and color of title" are defined in article 5508, it is helpful to review the history and purpose of the three-year limitations statute before deciding if it is applicable in a particular case.[5] The Fifth Congress of the Republic of Texas enacted the statute in 1841 in response to a problem peculiar to Texas land titles. During the period from 1820 to 1840 three different sovereigns—Spain, Mexico, and the Republic of Texas—exercised dominion over the region and issued grants to vast tracts of public land. Because the recording procedures utilized during these years were less than reliable, and because volumes of records were lost or destroyed during the revolution, many of these grants applied to lands that had previously been donated by the same or a different sovereign. As a result, it was often difficult or impossible to determine the ownership of large bodies of land. This confusion of land titles was particularly troublesome to a young nation interested in encouraging emigration and the development of its lands.

The three-year limitations statute was enacted to remedy this problem. The statute promoted stability in land titles by protecting junior grantees from the assertion

**3.** In addition to their limitations defense, appellees contended that the right of entry reserved in the Humphrey deed did not descend to the heirs of original grantors, and that the Humphrey deed restrictions were personal to the original grantee and did not apply to his assignees. Because it upheld appellees limitation claim, the district court found it unnecessary to consider these alternative issues.

**4.** Alternatively, appellees argue that since appellants no longer own any property in Block 8 of the Turner Addition, and since the Humphrey deed restrictions were intended to benefit only those persons owning adjacent proper-

ty, appellants have forfeited any right to enforce the right of entry reserved by the original grantors. This argument was not raised below, and therefore we decline to consider it. Because we find it necessary to remand this case, however, appellees may argue this issue before the district court.

**5.** Our discussion of the statute's history is taken from West, The Texas Three Year Statute of Limitation, 19 Texas L.Rev. 373 (1941) and Norvell, The Three Year Statute of Limitations, 2 Baylor L.Rev. 1 (1949).

of neglected but superior claims by those who acquired their titles from Mexican or Spanish grants. *League v. Atchison*, 73 U.S. (6 Wall.) 112, 18 L.Ed. 764 (1869). The grantee who held under a prior grant was protected *provided* he did not sleep on his rights for more than three years. For the most part, the problem sought to be remedied by the three-year statute no longer exists. Texas Land Titles: Part II, 7 St. Mary's L.J. 50, 86 (1975); Norvell, The Three Year Statute of Limitations, 2 Baylor L.Rev. 1, 1 (1949); West, The Texas Three Year Statute of Limitation, 19 Texas L.Rev. 373, 373 (1941).

The Texas courts have resisted attempts to apply the statute to situations that do not comport with its history and purpose. The leading case on the meaning of the statute is *Burnham v. Hardy Oil Co.*, 108 Tex. 555, 195 S.W. 1139 (1917). In *Hardy Oil*, Henry and Henrietta Parker owned as community property a league of land originally granted to Henry. After Henrietta's death, Henry conveyed the property to his son, Wm. Parker, and devised the property to Wm. in his will. Hardy Oil, the defendant in the action, held the property under regular conveyance from Wm. Parker. The plaintiffs, the heirs of a daughter of Henry and Henrietta Parker, claimed a portion of the property on the ground that Henry had lacked authority to dispose of his deceased spouse's community share. As part of its defense, Hardy Oil invoked the three-year statute of limitations.

In discussing the scope and reach of the three-year limitations statute, the court found it necessary to expand upon the statutory definition of "title":

As the term is used in this statute, it necessarily means something less than the paramount right to the land. The holder of such a right stands in no need of limitation for the establishment of the superiority of his claim. A statute of limitation of itself implies the existence of a better right than that possessed by the limitation claimant. Likewise, the term as used in the statute, necessarily means something more than the right

conferred by naked deed, adverse possession under which, though it conveys no title, will, with other requirements met, perfect a limitation under the five years statute. Otherwise, there could be no justification for permitting the title to ripen under a shorter period of possession than is required by the five years statute.

The necessity, as the Legislature viewed it, of quieting by limitation the rights to land of persons who stood in neither of these situations, but who occupied, it might be said, a ground between them, was the cause of the enactment of the statute. In an enactment of such design, this would lead, naturally, to the employment of the term "title," if employed at all, in some strictly technical sense. Hence, its definition in the statute as, "a regular chain of transfer from or under the sovereignty of the soil."

This means, in a word, that the claimant, by a regular chain of transfer of itself effectual for that purpose, must possess *the purported title originally conferred by the sovereign's grant*, the source of the claimant's right. It is not necessary that he hold whatever better right may lie back of the grant. Nor is it essential that any conveyance in the chain subsequent to the grant bestow a higher right than does the grant. *The title must simply flow unbrokenly from its source. It is not required at any stage to rise above its source, but it must maintain throughout its succession all of the elements of its source. To have this character and effect, the chain of transfer must therefore be such as, in itself, will invest the claimant with the right originally acquired in virtue of the grant.* League v. Rogan, 59 Tex. 427; *Grigsby v. May*, 84 Tex. 240, 19 S.W. 343.

.     .     .     .     .

The statute does not recognize as "title" any mere apparent right to the land granted. While it has reference only to the title originally evidenced by the grant, and disregards all other title, at no stage does it deal with any apparent right under that title, or with any right less

than the actual "interest" or "estate" created by the grant. *The claimant's title must connect with the grant. It does not connect with the grant, unless he holds the right vested by the grant.* He does not hold such a right, unless he has acquired, to the extent that the grant conferred it, the real and beneficial interest in the land. He acquired that interest if the chain of transfer is sufficient in itself to invest him with it. But the chain of transfer is not sufficient in itself for that purpose, if any grantor in the chain is without the legal power to convey what his deed purports to convey.

*Burnham v. Hardy Oil Co., supra,* 195 S.W. at 1142 (Emphasis added).

Under Texas community property law, Henry Parker lacked the power to convey or devise his deceased spouse's one-half interest in the property. For this reason, neither Wm. Parker nor his successor, Hardy Oil, could "connect with the grant" from the sovereign with respect to Henrietta Parker's community interest. The court concluded, therefore, that Hardy Oil could not claim the three-year statute of limitations as a defense to an action by Henrietta's heirs to enforce their rights in the property.

■ Applying the principles announced in *Hardy Oil* to this case, we find that appellees did not have "title" to the property within the meaning of the limitations statute. The grantors of the Humphrey deed owned the property in fee simple absolute, which is the maximum estate permitted under the law. In 1920 the Humphrey deed grantors conveyed to Tom Randolph a fee simple subject to a condition subsequent that the property not be used commercially. In conveying this defeasible fee, the grantors retained a future interest in the property—a right of entry—which would enable them to terminate the possessory estate should the grantee ever breach the stated condition. Obviously, the Humphrey deed did not transfer *"full and complete title* to the property to Thomas Randolph" as the

appellees contend. The grantors reserved a specific interest in the property, and, therefore, it became impossible for Randolph or his successors to connect with the sovereign to the extent of this interest. The requirement that the limitation claimant's title must "flow unbrokenly from its source" and "maintain throughout its succession all the elements of its source" has not been satisfied.

■ Furthermore, we are convinced that appellees did not possess the property under "color of title" as that phrase is used in the statute. Generally, color of title means the appearance or semblance of title when in fact there is no title at all. *Howth v. Farrar,* 94 F.2d 654, 658 (5th Cir.), *cert. denied,* 305 U.S. 599, 59 S.Ct. 75, 83 L.Ed. 380 (1938). Under the Texas three-year statute of limitations, however, color of title means something quite different. *Id.* Article 5508 defines both "title" and "color of title" in terms of a chain of transfers from the sovereign down to the person in possession. "Color of title" differs only to the extent that one or more of the transfers may be irregular.[6] The phrase does not "dispense with the fundamental, basic requirement of a 'transfer' which actually passes the interest conferred by the original grant or patent." West, *The Texas Three Year Statute of Limitation,* 19 Texas L.Rev. 375, 394 (1941). Thus, a claimant does not have color of title to an interest in property where, as here, "there is a complete *hiatus* in the chain." *Thompson v. Cragg,* 24 Tex. 582, 596, 597 (1859); *see League v. Atchison,* 73 U.S. (6 Wall.) 112, 18 L.Ed. 764 (1868); *Veramendi v. Hutchins,* 48 Tex. 531 (1878); *Veeder v. Gilmer,* 103 Tex. 458, 129 S.W. 595 (1910).

■ In this case it is impossible to get from the limitation claimant to the sovereign without coming to the gap created by the right of entry reserved in the Humphrey deed. Appellees attempt to bridge this gap by emphasizing the contingent, insubstantial nature of the reserved interest.

---

6. "Color of titles differs from titles only in externals. The substance of both is the same.

. . . ." *Thompson v. Cragg,* 24 Tex. 582, 596, 597 (1859).

Thus, appellees point out that, absent a breach of the condition subsequent, the possessory estate will last forever and note that even if a breach occurs, the possessory estate continues until the grantor or his successor elects to terminate it. In addition, appellees observe that the holder of a right of entry cannot enjoin waste or prevent the defeasible fee owner from putting the property to any use that does not violate the stated condition. We agree that the owner of a fee simple on condition subsequent "has the same rights and privileges over his estate as if it was a fee simple." *Davis v. Skipper*, 125 Tex. 364, 83 S.W.2d 318 (Tex.Com.App.1935, opinion adopted). However, the grantee of a defeasible fee simple does not acquire the whole "bundle of sticks" held by the owner of the fee simple absolute. His grantor has retained an interest, albeit a contingent one, and as to such interest the grantees' title does not connect with the sovereign's grant.

Next, appellees urge that the distinction between void and voidable deeds made in *Pearson v. Burditt*, 26 Tex. 157 (1861), supports their claim of "title" under article 5507. In *Pearson* the administrator of an estate brought suit to set aside a deed that a former administrator had fraudulently executed to the defendant. The defendant, claiming an unbroken chain of title from the sovereign, pleaded the three-year limitations statute. The court found that the transfer was fraudulent and therefore voidable as to the plaintiff. Nevertheless, the court concluded that because the administrator had the *power* to convey full title to the property, the defendant's deed was capable of supporting his limitations defense.

Appellees argue that upon breach of the condition Carolyn Fay's title was, at most, "voidable" by the Humphreys, and that under *Pearson* the appellants forfeited the right to the property after they waited over three years to institute suit. This argument is unacceptable. In *Pearson* the administrator had the *power* to transfer full title to the defendant. *Burnham v. Hardy Oil Co., supra*, 195 S.W. at 1144. In the present case no grantor in Carolyn Fay's chain of title had the power to convey the

fee simple absolute. Consequently, no one deriving title from Tom Randolph acquired any interest in the right of entry reserved in the Humphrey deed.

Finally, appellees contend that the Texas appellate court decision in *Field v. Shaw*, 535 S.W.2d 3 (Tex.Civ.App.1976, no writ), conclusively establishes that a grantee in Carolyn Fay's position has sufficient "title" to enforce the three-year statute. In *Field* the plaintiff had conveyed a fee simple on condition subsequent that the property be used solely for the operation of a cotton gin. The defendant installed a facility for unloading grain on the premises in 1967, and in 1973 the plaintiff filed suit to recover the property, contending that the operation of a grain business violated the imposed condition. The trial court found that grain dealing was an inconsequential use of the property and concluded that no breach of the condition subsequent had occurred. In a separate finding, however, the court found that the defendant had adversely possessed the property for more than three years after plaintiff's action had accrued and concluded that defendant had acquired title under article 5507. The court made no attempt to explain or reconcile these seemingly inconsistent findings of fact and conclusions of law.

In affirming, the court of civil appeals did "not reach" the question of whether the condition subsequent had or had not been breached. However, the court then proceeded to decide whether plaintiff's suit was barred by the three-year limitations statute. "Assuming" that a violation occurred in 1967, and accepting the trial court's finding that plaintiff learned of the breach in 1969, the court upheld the judgment that plaintiff's action was barred by article 5507.

The *Field* court apparently did not perceive the inconsistency between the trial court's findings (1) that no breach occurred and (2) that defendant acquired title by virtue of the limitations statute. If establishing a grain business did not violate the condition subsequent, plaintiff had no cause of action and the limitations period never

commenced to run. Under this scenario, plaintiff would have retained her right of entry and would have been free to terminate the possessory estate should defendant ever breach the condition. By failing to evaluate the trial court's finding that no breach occurred, the *Field* court, perhaps unjustly, deprived plaintiff of her interest in the property.

Because of this flaw in the opinion, we find *Field* to be of limited precedential value. Appellants, however, have raised a more fundamental objection to the use of *Field* as authority for deciding the issue in this case. A review of the appellate briefs [7] submitted in *Field* reveals that the plaintiff merely disputed the date of the accrual of her cause of action; she never asserted that defendants did not have "title or color of title" within the meaning of the limitations statute. Thus, the plaintiff in *Field* never raised the argument that appellees are raising here—that article 5507 can never be used to extinguish an interest that was expressly carved out of the estate conveyed to the limitations claimant. Furthermore, there is no evidence that either the trial court or the court of appeals gave any attention to this question.

Finally, even if we were convinced that the *Field* court squarely considered this question, we would not feel constrained to follow blindly its holding. "We may depart from the authority of an intermediate state appellate court decision if there is 'persuasive data that the highest court of the state would decide otherwise.'" *Feminist Women's Health Center v. Mohammad*, 586 F.2d 530, 552 (5th Cir. 1978), *cert. denied*, 444 U.S. 924, 100 S.Ct. 262, 62 L.Ed.2d 180 (1980), *quoting West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). We have already noted that *Hardy Oil* requires an unbroken chain of transfers from the sovereign to the limitation claimant. *Field* does not distinguish or even mention the princi-

ples discussed in the Texas Supreme Court opinion. We have given the *Field* decision "proper regard," but we find that we must listen to the voice of a higher authority.

Under Texas law, a right of entry must be asserted within a reasonable time after the condition subsequent is breached, or it will be lost forever. *Jones v. McLain*, 16 Tex.Civ.App. 305, 41 S.W. 714 (1897, no writ). The district court did not rule on the question of unreasonable delay, and we remand for a consideration of this issue. In addition, the court should consider appellees' alternative theory that since appellants no longer own any interest in Block 8 of the Turner addition, they have lost any right to enforce the Humphrey deed restrictions. Similarly, the court should determine whether Carolyn Fay is, under article 7393, Tex.Rev.Civ.Stat.Ann., entitled to recover compensation from appellants for the valuable improvements placed on the property by her and her predecessor in title.

REVERSED and REMANDED.

---

7. Appellees' motion to strike appellants' post-submission brief, which included the *Field* briefs, is denied. It is not our practice or our desire to consider briefs filed in a case that has a reported opinion. An opinion speaks for itself, and extraneous matter, regardless of its source, does not form part of the court's judgment. Because the *Field* decision is less than clear, however, we have found it helpful to refer to the briefs filed with the court that decided the case.