Honorable Garry Mauro Commissioner General Land Office Stephen F. Austin Building 1700 North Congress Ave. Austin, Texas 78701
Re: Reconsideration of Attorney General Opinion JM-364 (1985) (RQ-1292)
Dear Mr. Mauro:
You have requested that we reconsider Attorney General OpinionJM-364 (1985). The issue in Attorney General Opinion JM-364 was the meaning of the phrase "color of title" in article VII, section 4A(a)(3), of the Texas Constitution. Although no completely satisfying interpretation of subsection (a)(3) was suggested, we concluded that your office's interpretation at that time best served the intent behind section 4A. A significant factor in our decision was the rule that an agency's interpretation of a provision it administers is entitled to deference. See Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974). You have now asked us to reconsider our interpretation. You inform us that you have changed your interpretation of subsection (a)(3), and you have provided new information that lends support to your new interpretation. Relying on that new information as well as the rule that your agency's interpretation of the provision is entitled to deference, we conclude that your current interpretation is the better one and we overrule Attorney General Opinion JM-364.
The issue before us is the meaning of the phrase "color of title" in article VII, section 4A, of the Texas Constitution, which provides in part:
 (a) On application to the School Land Board, a natural person is entitled to receive a patent to land from the commissioner of the General Land Office if:
 (1) the land is surveyed public free school land, either surveyed or platted according to records of the General Land Office;
 (2) the land was not patentable under the law in effect immediately before adoption of this section;
 (3) the person acquired the land without knowledge of the title defect out of the State of Texas or Republic of Texas and held the land under color of title, the chain of which dates from at least as early as January 1, 1932; and
(4) the person, in conjunction with his predecessors in interest:
 (A) has a recorded deed on file in the respective county courthouse and has claimed the land for a continuous period of at least 50 years as of November 15, 1981; and . . . (Emphasis added.)
Your specific question in JM-364 was whether your office had correctly refused to grant applications for patents in two cases in which there was an irregularity in the transfer of land from the sovereign as well as a complete break elsewhere in the chain of title.
Article VII, section 4A(a)(3), provides that a person is eligible to receive a patent if "the person acquired the land without knowledge of the title defect out of the State of Texas or Republic of Texas and held the land under color of title, the chain of which dates from at least as early as January 1, 1932." At the time of your original request, your office interpreted "color of title" in section 4A(a)(3) to have the same meaning as "color of title" in article 5508, V.T.C.S., which provides:
 By the term `title' is meant a regular chain of transfers from or under the sovereignty of the soil, and by `color of title' is meant a consecutive chain of such transfers down to such person in possession, without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty; or when the party in possession shall hold the same by a certificate of headright, land warrant, or land scrip, with a chain of transfer down to him in possession. (Emphasis added.)
Under that statute a person cannot show color of title if there is a complete hiatus in the chain. Thompson v. Cragg, 24 Tex. 582,596-97 (1859). If the definition of "color of title" for purposes of section 4A(a)(3) is the same as "color of title" for purposes of article 5508, then section 4A(a)(3) must be read to require that an applicant show an unbroken chain of transfers, regular or irregular, going back to the sovereign. The requirement that the chain extend back at least to January 1, 1932, would have to be read as requiring that the attempted transfer from the sovereign must have occurred at least as early as January 1, 1932.
We concluded in JM-364 that your office was correct in its interpretation of "color of title." We explained our conclusion in part as follows:
 The legislative analysis of the proposed constitutional amendment that became article VII, section 4A, states:
 The purpose of this resolution is to amend Art. VII of the Texas Constitution by adding a new Sec. 4a to remedy title defects in those instances where such defect initially occurred in alleged transfer of title from the sovereign.
House Committee on Constitutional Amendments, Bill Analysis, Tex. H.J.R. 117, 67th Leg. (1981). The committee analysis also explains that the resolution was drafted with a view to correcting known defective transfers by the state of title to certain properties in Leon County. Id. Presumably the drafters were focusing on the specific problems in Leon County when they selected the wording of the proposed amendment and they probably did not contemplate more complicated situations such as those in question in which there is not only a defect in the transfer from the state but also some other defect in the applicant's claim to the property in question. Indeed, in reviewing the proposed amendment the Texas Legislative Council pointed out that one of the arguments against the proposed amendment was that it was drawn too narrowly:
 The proposed amendment discriminates unfairly. It prescribes rigid eligibility requirements that would apply to only a small class of landholders, excluding other landholders in similar, but not identical, circumstances who may be just as worthy of relief.
 Analysis of Proposed Constitutional Amendments, prepared by the Texas Legislative Council (1981), p. 9.
Attorney General Opinion JM-364, 3 (1985).
You now argue that the phrase "color of title, the chain of which dates from at least as early as January 1, 1932," should be interpreted to require that an applicant show an unbroken chain of transfers dating back to at least January 1, 1932, but that he need not show an unbroken chain extending back to the sovereign. See generally Howth v. Farrar, 94 F.2d 654, 658, cert. denied,305 U.S. 599 (1938) (meaning of "color of title" in Texas statute is different from meaning of "color of title" in other jurisdictions); see also Humphrey v. C.G. Jung Educational Center, 624 F.2d 637 (5th Cir. 1980). In your brief you support your argument by pointing out that the one person to whom section 4A was clearly intended to apply could not have received a patent had your office interpreted "color of title" in section 4A to be coextensive with "color of title" in article 5508.
You demonstrate that one of the purposes of article VII, section 4A, was to enable a claimant named Jesse Johnson to obtain a patent to 120 acres out of the Thornton P. Kuykendall Survey in Leon County. You provide the following facts:
 On July 31, 1838, Thornton P. Kuykendall received Donation Certificate 486 for 640 acres of unsurveyed public domain for having been detailed to guard the baggage at Harrisburg on April 21, 1836. A land certificate is an obligation of the government entitling the owner to secure a specific quantity of land by following the law. . . . Certificate 486 was returned to the general land office on September 29, 1854, and applied toward a 320 acre survey in Freestone County. On April 18, 1857, a patent was issued on this 320 acre Freestone County tract. Since only 320 acres were applied against Certificate 486, the land office issued Unlocated Balance Certificate 116 6/120 for 320 acres on April 18, 1857. On February 28, 1859, field notes for the 320 acre Kuykendall Survey in Leon County were received in the land office. These field notes purport to have been made pursuant to the unlocated balance of Donation Warrant 486; however, Unlocated Balance Certificate 116 6/120 was not filed with these field notes and was never applied toward this survey. This 320 acre Kuykendall Survey in Leon County includes the 120 acre tract claimed by Jesse Johnson. On December 29, 1874, field notes for a 221 acre survey in Young County, made pursuant to Unlocated Balance Certificate 116 6/120, were filed in the land office. Unlocated Balance Certificate 116 6/120 was also filed in the land office on December 29, 1874, and was applied to this 221 acre survey in Young County. This Young County survey was patented on February 26, 1890. The remaining 99 acres of the unlocated balance certificate were never applied to any survey.
 Since the unlocated balance certificate or any other land certificate was not returned to the land office with the field notes of the Leon County tract and no certificate was ever applied to that tract, those field notes were void and a patent could not be issued. . . . Even if the remainder of the unlocated balance certificate had been applied to the Leon County tract, the certificate would have been 221 acres short. Even as applied only to Mr. Johnson's portion, the certificate would have been 22 acres short. Mr. Johnson had no interest in this Leon County tract other than what could be traced back through a chain of title to Thornton P. Kuykendall. (Citations omitted.)
General Land Office brief in support of reconsideration of Attorney General Opinion JM-364, 3-4. Your office issued a patent to Mr. Johnson when he applied for one. You now realize, however, that because there was no transfer from the state at all to Mr. Kuykendall, Mr. Johnson would not have been able to show color of title as defined by article 5508. Therefore, if your office had uniformly interpreted "color of title" in section 4A to be the same as "color of title" in article 5508, the person section 4A was intended to help would have been ineligible for a patent under section 4A.
We conclude, therefore, that "color of title" in section 4A cannot have been intended to be as narrow as "color of title" in article 5508. Consequently, we believe that section 4A requires an applicant to show an unbroken chain of transfer dating back at least as far as January 1, 1932, but that an applicant need not show an unbroken chain of transfers back to the sovereign.
 SUMMARY
Section 4A(a)(3) of article VII of the Texas Constitution requires an applicant for a patent to land under that section to show an unbroken chain of transfers dating back to January 1, 1932, but does not require an applicant to show an unbroken chain of transfers dating back to the sovereign. This opinion overrules Attorney General Opinion JM-364 (1985).
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lous McCreary Executive Assistant Attorney General
 Judge Zollie Steakly Special Assistant Attorney General
 Rick Gilpin Chairman Opinion Committee
 Prepared by Sarah Woelk Assistant Attorney General