

# THE ATTORNEY GENERAL
## OF TEXAS

May 20, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Garry Mauro                     Opinion No. JM-907
Commissioner
General Land Office                       Re:  Reconsideration of
Stephen F. Austin Building               Attorney General Opinion
1700 North Congress Ave.                 JM-364 (1985) (RQ-1292)
Austin, Texas   78701

Dear Mr. Mauro:

You have requested that we reconsider Attorney General
Opinion JM-364 (1985). The issue in Attorney General
Opinion JM-364 was the meaning of the phrase "color of
title" in article VII, section 4A(a)(3), of the Texas
Constitution. Although no completely satisfying
interpretation of subsection (a)(3) was suggested, we
concluded that your office's interpretation at that time
best served the intent behind section 4A. A significant
factor in our decision was the rule that an agency's
interpretation of a provision it administers is entitled to
deference. See Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974).
You have now asked us to reconsider our interpretation. You
inform us that you have changed your interpretation of
subsection (a)(3), and you have provided new information
that lends support to your new interpretation. Relying on
that new information as well as the rule that your agency's
interpretation of the provision is entitled to deference,
we conclude that your current interpretation is the better
one and we overrule Attorney General Opinion JM-364.

The issue before us is the meaning of the phrase "color
of title" in article VII, section 4A, of the Texas
Constitution, which provides in part:

> (a)  On application to the School Land
> Board, a natural person is entitled to
> receive a patent to land from the commis-
> sioner of the General Land Office if:
>
> (1)  the land is surveyed public free
> school land, either surveyed or platted

according to records of the General Land Office;

(2) the land was not patentable under the law in effect immediately before adoption of this section;

(3) the person acquired the land without knowledge of the title defect out of the State of Texas or Republic of Texas and held the land under color of title, the chain of which dates from at least as early as January 1, 1932; and

(4) the person, in conjunction with his predecessors in interest:

(A) has a recorded deed on file in the respective county courthouse and has claimed the land for a continuous period of at least 50 years as of November 15, 1981; and . . . (Emphasis added.)

Your specific question in JM-364 was whether your office had correctly refused to grant applications for patents in two cases in which there was an irregularity in the transfer of land from the sovereign as well as a complete break elsewhere in the chain of title.

Article VII, section 4A(a)(3), provides that a person is eligible to receive a patent if "the person acquired the land without knowledge of the title defect out of the State of Texas or Republic of Texas and held the land under color of title, the chain of which dates from at least as early as January 1, 1932." At the time of your original request, your office interpreted "color of title" in section 4A(a)(3) to have the same meaning as "color of title" in article 5508, V.T.C.S., which provides:

By the term 'title' is meant a regular chain of transfers from or under the sovereignty of the soil, and by 'color of title' is meant a consecutive chain of such transfers down to such person in possession, without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic

> fairness and honesty;  or when   the party   in
> possession   shall    hold    the   same   by    a
> certificate of  headright, land   warrant,   or
> land scrip, with a chain of transfer down   to
> him in possession.   (Emphasis added.)

Under that statute a  person cannot show   color of title  if
there is a complete hiatus in the chain.  Thompson v. Cragg,
24 Tex. 582, 596-97 (1859).  If the definition of "color   of
title" for  purposes  of section  4A(a)(3)  is the   same   as
"color of title" for purposes of article 5508, then   section
4A(a)(3) must be read to  require that an applicant show   an
unbroken chain  of transfers,  regular or  irregular,  going
back to  the  sovereign.   The requirement  that  the  chain
extend back at least  to January 1, 1932,  would have to  be
read as  requiring  that  the attempted  transfer  from  the
sovereign must have occurred at least as early as January 1,
1932.

We concluded in JM-364 that your office was correct  in
its interpretation of  "color of title."   We explained  our
conclusion in part as follows:

> The legislative analysis  of the   proposed
> constitutional amendment that became  article
> VII, section 4A, states:

>> The purpose  of this  resolution is  to
>> amend  Art.  VII  of  the  Texas
>> Constitution by adding a new Sec. 4a to
>> remedy title defects in those instances
>> where such defect initially occurred in
>> alleged transfer  of  title  from  the
>> sovereign.

> House Committee on Constitutional Amendments,
> Bill Analysis,  Tex.  H.J.R.  117,  67th  Leg.
> (1981).  The committee analysis also explains
> that the resolution was  drafted with a  view
> to correcting  known defective  transfers  by
> the state of title  to certain properties  in
> Leon County.  Id.  Presumably  the  drafters
> were focusing  on  the specific  problems  in
> Leon County when they selected the wording of
> the proposed amendment and they probably  did
> not contemplate  more complicated  situations
> such as those in  question in which there  is
> not only a  defect in the  transfer from  the
> state but  also  some  other defect  in  the
> applicant's  claim   to   the   property   in

question.  Indeed, in reviewing the  proposed amendment  the  Texas Legislative  Council pointed out that one of the arguments against the proposed amendment was that it was  drawn too narrowly:

> The  proposed  amendment  discriminates unfairly.  It prescribes rigid eligibility requirements that  would apply  to only  a small  class  of  landholders,  excluding other  landholders  in  similar,  but  not identical, circumstances who  may be  just as worthy of relief.

> Analysis   of   Proposed   Constitutional Amendments, prepared by the Texas Legislative Council (1981), p. 9.

Attorney General Opinion JM-364, 3 (1985).

You now  argue that  the phrase  "color of  title,  the chain of which dates  from at least as  early as January  1, 1932," should be  interpreted to require  that an  applicant show an unbroken chain of transfers dating back to at  least January 1, 1932, but that he need not show an unbroken chain extending back  to the  sovereign.  See generally Howth  v. Farrar, 94 F.2d 654, 658, cert. denied, 305 U.S. 599  (1938) (meaning of "color of title"  in Texas statute is  different from meaning of  "color of title"  in other  jurisdictions); see also Humphrey v. C.G. Jung Educational Center, 624  F.2d 637 (5th  Cir.  1980).  In your  brief you  support  your argument by pointing out that the one person to whom section 4A was clearly intended to  apply could not have received  a patent had  your  office  interpreted "color  of  title"  in section 4A  to  be  coextensive with  "color  of  title"  in article 5508.

You demonstrate  that one  of the  purposes of  article VII, section  4A,  was  to enable  a  claimant  named  Jesse Johnson to obtain a patent to 120 acres out of the  Thornton P. Kuykendall  Survey  in  Leon  County.  You  provide  the following facts:

> On  July  31,  1838,  Thornton  P.  Kuykendall received Donation  Certificate  486  for  640 acres of unsurveyed public domain for  having been  detailed  to  guard  the  baggage  at Harrisburg  on  April  21,  1836.  A  land certificate  is  an  obligation  of  the government entitling  the owner  to secure  a

specific quantity of land by following the law. . . . Certificate 486 was returned to the general land office on September 29, 1854, and applied toward a 320 acre survey in Freestone County. On April 18, 1857, a patent was issued on this 320 acre Freestone County tract. Since only 320 acres were applied against Certificate 486, the land office issued Unlocated Balance Certificate 116 6/120 for 320 acres on April 18, 1857. On February 28, 1859, field notes for the 320 acre Kuykendall Survey in Leon County were received in the land office. These field notes purport to have been made pursuant to the unlocated balance of Donation Warrant 486; however, Unlocated Balance Certificate 116 6/120 was not filed with these field notes and was never applied toward this survey. This 320 acre Kuykendall Survey in Leon County includes the 120 acre tract claimed by Jesse Johnson. On December 29, 1874, field notes for a 221 acre survey in Young County, made pursuant to Unlocated Balance Certificate 116 6/120, were filed in the land office. Unlocated Balance Certificate 116 6/120 was also filed in the land office on December 29, 1874, and was applied to this 221 acre survey in Young County. This Young County survey was patented on February 26, 1890. The remaining 99 acres of the unlocated balance certificate were never applied to any survey.

Since the unlocated balance certificate or any other land certificate was not returned to the land office with the field notes of the Leon County tract and no certificate was ever applied to that tract, those field notes were void and a patent could not be issued. . . . Even if the remainder of the unlocated balance certificate had been applied to the Leon County tract, the certificate would have been 221 acres short. Even as applied only to Mr. Johnson's portion, the certificate would have been 22 acres short. Mr. Johnson had no interest in this Leon County tract other than what could be traced back through a chain of title to Thornton P. Kuykendall. (Citations omitted.)

General Land Office brief  in support of reconsideration  of Attorney General Opinion JM-364, 3-4.  Your office issued  a patent to  Mr. Johnson  when he  applied for  one.  You  now realize, however, that  because there was  no transfer  from the state at all  to Mr. Kuykendall,  Mr. Johnson would  not have been able to show color of title as defined by  article 5508.  Therefore, if your  office had uniformly  interpreted "color of title" in section 4A  to be the same as "color  of title" in article 5508, the  person section 4A was  intended to help  would  have  been ineligible  for  a  patent  under section 4A.

We  conclude,  therefore,  that  "color  of  title"  in section 4A cannot have  been intended  to be  as narrow  as "color of title" in article 5508.  Consequently, we  believe that section 4A  requires an applicant  to show an  unbroken chain of transfer dating back at least as far as January  1, 1932, but that an applicant need not show an unbroken  chain of transfers back to the sovereign.

### S U M M A R Y

Section 4A(a)(3)  of  article VII  of  the Texas Constitution requires an applicant  for a patent to land  under that section to  show an unbroken chain of transfers dating back to January 1,  1932,  but does  not  require  an applicant  to  show  an  unbroken  chain  of transfers dating back to the sovereign.  This opinion overrules Attorney General  Opinion JM-364 (1985).

Very truly yours

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General