Ethel Michelle Pumphrey **PIERCE, et al., Appellants,**

v.

**Harold L. GILLESPIE, et al., Appellees.**

No. 13–87–364–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 6, 1988.

Rehearing Denied Nov. 30, 1988.

Richard B. Stone, Allen Wood, Lucian E. Morehead, Corpus Christi, for appellant.

J.W. Meredith, Jr., Wilson Calhoun, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

This is a trespass to try title suit in which the parties sought to establish title to 349.85 acres of land, located in Nueces County, Texas. The appellees (the heirs of C.N. Cooke) sued the appellants (the heirs of Ethel P. Cooke) in a trespass to try title action. The appellants counter-claimed under a trespass to try title action and affirmatively plead adverse possession. The trial court, pursuant to jury answers, found the entire fee simple title of the land passed under the terms of C.N. Cooke's will to the appellees, and that they were entitled to one half the total fair rental value of the land and cancellation of a deed.

There are two sets of appellants: appellant Pierce, et al., and appellant Speck. The appellants' points of error contest the factual and legal sufficiency of the evidence. Appellees, by two cross-points, contest the trial court's refusal to award the appellees attorney's fees. We affirm the trial court's judgment.

At trial the parties stipulated that there was a regular chain of conveyances from the sovereign to C.N. Cooke of the real estate; that the real estate was the separate property of C.N. Cooke at the date of his death. They further stipulated that "C.N. Cooke is the record title owner of the real estate, with no recorded transfers or conveyances of the real estate since the transfer of the real estate to C.N. Cooke, except for a deed from Ethel P. Cooke to Corpus Christi State National Bank as Trustee, such deed being dated November 15, 1971. There is no known deed, recorded or otherwise, from C.N. Cooke or his personal representatives to Ethel P. Cooke." It was also stipulated that Ethel P. Cooke did not grant the deed in her capacity as co-executor of the C.N. Cooke estate.

C.N. Cooke and Ethel P. Cooke were husband and wife. Mr. Cooke died on June 25, 1965, survived by Ethel Cooke and certain blood relatives, the C.N. Cooke heirs. Ethel Cooke died on March 17, 1979, survived by her blood relatives, the Ethel P. Cooke heirs.

The dispute arises from the following circumstances. The terms of C.N. Cooke's will provided three distinct bequests: 1) by Article II he bequeathed various items of personal property to Ethel Cooke; 2) by Article III, he bequeathed to Ethel Cooke an interest in the estate known as a marital deduction gift; 3) by Article IV of the will, the residue of the estate was devised to the trustees of the C.N. Cooke Trust. Corpus Christi State National Bank and Ethel Cooke were co-executors of the estate and co-trustees of the C.N. Cooke Trust. Ethel Cooke was the income beneficiary of the trust. The will provided that the trust terminated upon Ethel Cooke's death, whereupon the corpus of the trust was to be distributed to the C.N. Cooke blood heirs.

The real estate was not specifically devised in C.N. Cooke's will. In 1971, Ethel Cooke executed a deed purporting to convey an undivided one-half interest in the 349.85 acre tract to the Corpus Christi State National Bank as trustee for the Ethel Cooke Trust. The deed recited that Ethel Cooke had inherited the undivided one-half interest in the property under the marital deduction provision of C.N. Cooke's will.

It was established that pursuant to C.N. Cooke's will, Ethel Cooke was entitled to $55,420.02 as a marital deduction gift. It was agreed that a portion of the gift (approximately $22,000.00) was funded by insurance proceeds and personal property pursuant to the will. At issue was what property the executors designated to fund the remaining unfunded portion of the marital deduction gift. The appellants, heirs of Ethel Cooke, contend that the marital deduction gift to Ethel Cooke was satisfied in part by transfer of one-half interest in the real estate, as evidenced by the recitation in the deed. Appellees, heirs of C.N. Cooke, contend the real estate was never designated by the executors to satisfy the marital deduction gift, but rather the unfunded portion was satisfied by cash payments.

█ The appellants attack the legal and factual sufficiency of the evidence to support the jury's findings. In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the finding of the jury and disregard all evidence and inferences to the contrary. *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex.1985); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding of the jury, the point must be overruled and the finding upheld. *In Re King's Estate*, 244 S.W.2d at 661, 662.

█ An assertion that the evidence is "insufficient" to support a finding can mean that the evidence supporting the finding is so weak or that the evidence to the contrary is so overwhelming that we should set aside the finding and order a new trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We consider all of the evidence in making this determination. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986).

Appellants complain of the legal insufficiency of the evidence to support the jury's findings on special issues 2 and 4. Special issue 2 inquired: "Do you find from a preponderance of the evidence that the co-executors of the estate of C.N. Cooke selected and designated an interest in the 349.85 acres in question to satisfy that portion of the marital deduction bequest which passed to Ethel Cooke under the terms of article III of Mr. Cooke's will?" The jury answered, "We do not."

Special issue 4 inquired: "Do you find from a preponderance of the evidence that the co-executors of the estate of C.N. Cooke selected and designated an account payable of $33,000 (approximately) by the estate of C.N. Cooke and a corresponding account receivable in favor of Ethel Cooke to satisfy that portion of the marital deduction bequest which passed to Mrs. Cooke under the terms of article 3 of Mr. Cooke's will?" The jury answered, "We do."

█ There was some evidence to support the finding of the jury on special issues 2 and 4. Two experts, Velda Woods and Richard Jones, testified that in their opinion the co-executors of the estate designated an account payable by the estate of C.N. Cooke and an account receivable to Ethel Cooke to satisfy the marital deduction. Woods supported her testimony with bank documents which showed an accounts receivable and accounts payable of an amount that, according to Miss Woods, included the marital deduction amount owing to Ethel Cooke. They both testified that it was their opinion that the executors did not fund the marital deduction gift with the real estate. Appellant Pierce's points of error two and five, and appellant Speck's points of error two and three are overruled.

The appellants contend that the jury's finding on special issue 2 was against the great weight and preponderance of the evidence and that the evidence was insufficient to support the jury's finding on special issue 4.

Velda Woods, a CPA, testified that the executors of the C.N. Cooke Estate hired her in 1965 to divide C.N. Cooke's and Ethel Cooke's estate. Woods testified that $22,774.00 of the marital tax deduction gift was funded by insurance proceeds and Mr. Cooke's one-half community interest in the

personal automobile, household items, jewelry, and a bond. She said the other $32,000 still to be funded was carried as an accounts payable to Ethel Cooke and finally paid to Ethel P. Cooke's estate in 1979 and 1980 in cash payments. She supported her testimony by referring to the bank records that describe payments made to the estate of Ethel Cooke, which she asserted included the marital deduction gift payment. It was her testimony that the bank followed her recommendations regarding how to divide the estate. She said she reviewed the records and determined that the executors did not use any part of the 350 acre tract of land to fulfill the marital deduction bequest. In addition to her testimony, her work papers were in evidence. These papers supported her position at trial and showed an accounts receivable in Ethel Cooke's account and a debit to the C.N. Cooke Trust. Woods testified that these accounts included the marital deduction amount due to Ethel Cooke. Therefore, it was her opinion that an award of the real estate to the appellants would be a double payment of the marital deduction gift.

Mr. Pratt, the attorney who drafted the deed and represented Mr. and Mrs. Cooke before their deaths, testified that it was his opinion that Ethel Cooke should have received a portion of the real estate to satisfy the marital deduction. He said his calculation that Ethel Cooke had an interest of fifty per cent in the real estate at the time he prepared the deed was in error. He said that the proper acreage Ethel Cooke should have received was 77.76 acres. He testified that in 1971, in preparation of the deed, he did not go back into the estate records to determine the accuracy of the statement in the deed about the marital deduction gift, but had determined it from information in his file. He said the reason he prepared the deed was because he was preparing documents to transfer Ethel Cooke's property to a revocable trust. It was stipulated by the appellants that the deed was not signed by Ethel Cooke in her capacity as executor. Pratt said there was no discussion during the execution of the deed relating to changing any decision about what would satisfy the marital de-

duction. He said he never heard it discussed that a portion of the 350 acre tract would be used to satisfy the marital deduction. He said upon execution of the deed, he turned it over to Mr. Young who represented the bank acting as a trustee in 1971. Mr. Young read the deed and made no objection to it.

Pratt testified that an entry in the bank records of the C.N. Cooke Trust in December 1971 transferring the land to Mrs. Cooke was pursuant to the trustee's powers to make distributions. It was Mr. Pratt's opinion the trustees had such powers pursuant to the trust terms described in the will. He said that the entry on the books was consistent with the deed.

Pratt was questioned about what the document, schedule M, represented. He said he prepared it and it was not intended to be a designation of property used to satisfy the marital deduction clause but that it was used to list items that were qualified to be used in settling the marital deduction gift. He explained that it would not have been appropriate at that time to designate the items to fund the marital deduction because it was prior to the revenue agent's determination of the marital tax deduction.

Jo Ann Midwikis, a CPA, testified as an expert for the appellant. It was her opinion that the executors designated and decided to fund the marital deduction by using fifty percent of the 349 acre tract. This opinion was based on three different documents: the deed, the revocable trust agreement for Ethel Cooke, and a bank entry dated December 29, 1971. Furthermore, she disputed Pratt's figures and testimony that Mrs. Cooke should have received only 77 acres. It was her opinion that the calculations had to take into consideration the net value of the acreage and her calculations showed that Ethel Cooke's heirs should receive 271.52 acres to satisfy the marital deduction, with the heirs of C.N. Cooke receiving 78.33 acres. She conceded that if the deed was in error in its recitations then the bank entries based on the deed would be in error. She testified that she disagreed with portions of Wood's

accountability report. It was her opinion that the figure on Woods' statement of accountability that Woods testified included the marital deduction gift was a plug figure and did not represent the marital deduction liability. She did agree that this figure representing a debt of the C.N. Cooke Trust was paid in full to Ethel Cooke's estate.

Richard Jones, a CPA, testified for the appellees as a rebuttal witness. It was his opinion that the real estate was not used or selected as part of the marital deduction gift. Instead, he concluded that the portion of marital deduction gift previously unfunded was satisfied by cash payments in 1979 and 1980. He explained that he could find no documentation or deed transfering the land from the estate to Ethel Cooke and it could not be determined from the will. It was also his opinion that appellant's expert, Midwikis, erred in her computations and interpretations of the will. He also disagreed with Pratt's calculations. Regarding the entry on the bank records for the C.N. Cooke Trust transferring the property to the Ethel Cooke Trust, he believed the entry was made in error and was simply a reflection of the deed with the erroneous recitation. There were numerous documents in evidence that showed that since 1971, the Ethel Cooke Trust and the Ethel Cooke Estate carried the property as belonging to the trust and the estate.

After reviewing all the evidence, we find the jury's answers to special issues two and four were not contrary to the overwhelming weight of the evidence so as to be clearly wrong or unjust. The jury could have believed from the testimony and exhibits that Ethel Cooke and the bank, as co-executors of the C.N. Cooke estate, never intended to fund the marital tax deduction gift with the real estate; that they intended and did make cash payments to pay the gift as recommended by Velda Woods; that the deed and subsequent bank entries were made inadvertantly; that this was due to the erroneous belief by Pratt that half an interest in the real estate was to fund the estate, and that this mistake was due to the fact that he did not review the bank records. Therefore, appellant Pierce's points of error three, four, six and seven are overruled and appellant Speck's points of error two and three are overruled.

Appellant Pierce contests the legal and factual sufficiency to support the jury's negative findings to special issues 5A, 5B, and 5C. Appellant Speck contests only the factual sufficiency of the jury's findings of those issues. These issues inquired whether Ethel Cooke or Corpus Christi State National Bank, as her trustee, held peaceful and adverse possession to the real estate based on the three, five and ten year statute of limitations.

In order to establish adverse possession as a matter of law, the claimant must show by undisputed evidence his actual peaceable and adverse possession of the property continuously for the appropriate time period. Also, the claimant must submit undisputed and conclusive evidence of probative force on each essential element of adverse possession.

■ To establish a claim of adverse possession under the three-year statute of limitations, appellant had the burden to prove the property was held "in peaceable and adverse possession under title or color of title not later than three years after the date the cause of action accrued." Tex.Civ. Prac.Rem.Code § 16.024. To be entitled to the benefit of the three year statute of limitations the adverse claimant must establish a chain of title from the sovereignty. Tex.Civ.Prac. & Rem.Code Ann. § 16.021(2), (4) (Vernon 1986).

■ The parties stipulated that title was established from the sovereign to C.N. Cooke. The appellants offered a deed into evidence in which Ethel Cooke, grantor, transferred the real estate to Corpus Christi State National Bank, as trustee. The deed was dated 1971. C.N. Cooke's will was in evidence, but no specific devise of the real estate was made in the will. The jury found the real estate was not transferred from the executors to Ethel Cooke to satisfy the marital deduction gift. Therefore, Ethel Cooke had no legal power to convey the real estate to her trust. The chain of title is not sufficient since Ethel

Cooke, the grantor, was without legal power to convey what the deed purports to convey. *Burnham v. Hardy Oil Co.*, 108 Tex. 555, 195 S.W. 1139 (1917); *see also Humphrey v. C.G. Jung Educational Center*, 624 F.2d 637 (5th Cir.1980). Appellant Pierce's point of error eight is overruled; Speck's points of error four and five are overruled.

To establish a claim of adverse possession under the five-year statute the appellant had the burden of proving the possessors cultivated or used the property, paid taxes, and claimed the property under a duly registered deed. Tex.Civ.Prac. & Rem.Code § 16.025. There was no evidence that Ethel Cooke, or the trustee paid taxes continuously on the property for five years. Therefore, appellants did not establish their claim of adverse possession. *Radford v. Garza*, 586 S.W.2d 656, 660 (Tex.Civ.App.—Corpus Christi 1979, no writ). Appellant Speck's points of error six and seven are overruled; appellant Pierce's point of error nine is overruled.

Under the ten year statute the claimant must show 1) possession of the land; 2) cultivation, use or enjoyment thereof; 3) an adverse or hostile claim; and 4) an exclusive domination over the property and an appropriation of it for his own use and benefit for 10 years. Tex.Civ.Prac. & Rem. § 16.026; *Wright v. Wallace*, 700 S.W.2d 269, 270 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

The only evidence regarding possession and use of the real estate by Ethel Cooke or the bank was the testimony of Mr. Powell. He testified that in 1978 when he began to work for Corpus Christi State National Bank the land was being operated as a farm. He said the bank leased the land out to a tenant farmer. The testimony also revealed that a portion of the rent collected had been paid to the Ethel Cooke heirs beginning in 1979 and the C.N. Cooke heirs. This evidence did not establish possession and use of the land for ten consecutive years.

Because of their fiduciary relationship as trustees of the C.N. Cooke trust, neither the bank nor Ethel Cooke could adversely possess the land without repudiating the trust and giving each beneficiary notice of the repudiation. *Smith v. Dean*, 240 S.W.2d 789, 791 (Tex.Civ.App.—Waco 1951, no writ); *Hooper v. Courtney*, 256 S.W.2d 462, 467 (Tex.Civ.App.—Amarillo 1952, no writ).

Mr. Gillespie testified that prior to 1979 he was unaware of the assets of the trust. In 1979 the bank, as co-trustee of the C.N. Cooke residuary trust, provided him and the other heirs with a list of assets from the trust. The bank records indicated that the real estate was owned one half by the Ethel P. Cooke Estate.

It was uncontradicted that the C.N. Cooke heirs had no knowledge of the 1971 deed or of any bank records indicating that the property was being carried as an asset of Ethel Cooke's property. Roger Powell testified that the bank's reports regarding the assets of the C.N. Cooke Trust and Ethel Cooke Trust would have only been sent to Ethel Cooke, her accountant, and her attorney and that the reports were not sent to the C.N. Cooke heirs until 1974.

Therefore, adverse possession was not established as a matter of law and the jury answers were not contrary to the great weight of the evidence. Appellant Speck's points of error eight and nine and appellant Pierce's point of error ten are overruled.

The appellants also contend the trial court erred in failing to grant their motion for an instructed verdict. However, the overruling of a motion for an instructed verdict will not be reviewed on appeal unless it is recited in a formal order or in the judgment. *Superior Trucks, Inc. v. Allen*, 664 S.W.2d 136, 145 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Steed v. Bost*, 602 S.W.2d 385, 387 (Tex.Civ.App.—Austin 1980, no writ).

Since the record before this Court does not show the recitation in either a formal order or in the judgment, the complaint cannot be considered on appeal. Appellant Pierce's point of error number one, and appellant Speck's point of error number one are overruled.

█ Appellees, by two cross-points, complain of the trial court's denial of attorney's fees pursuant to Tex.Civ.Prac. & Rem.Code § 16.034. A court of appeals has no jurisdiction to consider a cross-point of error if the appellee fails to apprise the trial court of its objections or complaints to the judgment. *Cameron County v. Velasquez*, 668 S.W.2d 776, 781 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Saenz Motors v. Big H. Auto Auction, Inc.*, 653 S.W.2d 521, 526 (Tex.App.—Corpus Christi 1983) *affirmed*, 665 S.W.2d 756 (Tex.1984). Since the appellees made no exception to the judgment, these points cannot be considered on appeal. Appellees' cross-points one and two are overruled.

The judgment of the trial court is AFFIRMED.

## OPINION ON MOTION FOR REHEARING

█ In the opinion, we did not consider the merit of appellees' cross-points, which complained that the trial court erred, or abused its discretion, by failing to award appellees' $35,000.00 in attorney's fees. We held the cross-points were not preserved. By Motion for Rehearing, the appellees' urge that the cross-points were in fact preserved because they requested the $35,000.00 for attorney fees in the motion for judgment filed with the court. We now hold that this was sufficient to preserve the claimed error. *See* Tex.R.App.P. 52(a); *Larrumbide v. Doctors Health Facilities*, 734 S.W.2d 685, 694 (Tex.App.—Dallas 1987, writ denied).

At trial the jury was not given an issue on attorney fees. Instead the matter was presented to the trial court. No findings of facts or conclusions of law were requested or filed with the trial court.

By cross-point the appellees complain that the trial court erred in not awarding attorney fees under Tex.Civ.Prac. & Rem. Code Ann. § 16.034 (Vernon 1986). This section provides in part:

In a suit for the possession of real property between a person claiming under record title to the property and one claiming by adverse possession, if the

prevailing party recovers possession of the property from a person unlawfully in actual possession, the *court may* award costs and reasonable attorney's fees to the prevailing party. Tex.Civ.Prac. & Rem.Code § 16.034(a). (Emphasis added)

The issue now before us is whether the statute requires the trial court to award attorney fees, or whether such award is left to the trial court's discretion.

█ Appellees assert that the creation of the statute allowing attorney fees in adverse possession suits was based on Tex.Rev.Civ.Stat. art. 2226 (now codified at Tex.Civ.Prac. & Rem.Code § 38.001 (Vernon 1986). Appellees argue that since art. 2226 has been construed as being mandatory, section 16.034 should also be construed as being mandatory. *Arguelles v. Kaplan*, 736 S.W.2d 782 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (construing Tex.Civ. Prac. & Rem.Code § 38.001 to be mandatory); *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640 (Tex.App.—Corpus Christi 1984, no writ) (construing art. 2226 to be mandatory). We disagree. Section 16.034 states "the *court may* award costs and reasonable attorneys fees to the prevailing party." In construing the statute, we use Chapter 311 of the Texas Government Code. Civ.Prac. & Rem.Code Ann. § 1.002. The Government Code provides "words and phrases shall be read in context and construed according to the rules of grammar and common usage." Tex.Gov't.Code Ann. § 311.011(a) (Vernon 1988). Statutory provisions for the recovery of attorney fees must be strictly construed since they are in derogation of the common law and penal in nature. *Harvey v. Alexander*, 671 S.W.2d 727, 730 (Tex.App.—Fort Worth 1984, no writ); *Ryan v. Mo–Mac Properties*, 644 S.W.2d 791, 794 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). Accordingly, we hold that § 16.034 does not require the court to award attorney's fees, but gives the court discretion in making the award. *See Whitley v. King*, 581 S.W.2d 541 (Tex. Civ.App.—Fort Worth 1979, no writ).

By the second point of error, the appellees complain that the trial court abused its discretion in not awarding attorney fees.

The statutory authorization for the trial court to award attorney fees does not *require* that they be awarded. *Branaum v. Patrick*, 643 S.W.2d 745, 751 (Tex.App.— San Antonio 1982, no writ).

The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators*, 701 S.W.2d 238, 241 (Tex.1985), *cert. denied* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The mere fact that a trial judge decides a matter within his discretion in a different manner than another trial judge or even an appellate judge in a similar circumstance does not demonstrate that such ruling would be an abuse.

We overrule appellees' cross-points.